IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN MEADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CASE NO. 13 C 7950 |
| | ) |
| MORAINE VALLEY COMMUNITY COLLEGE, | ) Judge Samuel Der-Yeghiayan |
| | ) Magistrate Judge Michael Mason |
| Defendant. | ) |

MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION
TO DISMISS

NOW Comes Plaintiff, ROBIN MEADE, by her attorneys, and files this Memorandum in response to Defendant's Motion to Dismiss her Complaint.

**FACTS**

Plaintiff, Robin Meade was hired by Defendant Moraine Valley Community College ("Moraine Valley") as a part time (adjunct faculty) employee to teach classes at the College. The written contract between the parties stated that she would teach five courses the first semester of the 2013-14 school year, with the further understanding that she would also teach classes during the second semester of that year. Plaintiff is also President of Moraine Valley Adjunct Faculty Organization (MVAFO), the certified collective bargaining representative for all Adjunct Faculty employed by Moraine Valley Community College.

On August 20, 2013, in her capacity as President of the MVAFO, Plaintiff wrote a letter which she sent to the Board Members of The League for Innovation in Community College ('League"). That letter set forth the position formulated by the MVAFO membership regarding MORAINE VALLEY's affiliation with The League. That letter was critical of Moraine Valley's treatment of adjunct faculty, stating, *inter alia,*

> adjunct faculty are treated as a "lower class of people" and "disposable resources," although they teach the majority of the classes at the school;
> the college "works hard to divide and conquer between the union chapters" at the school;
> Moraine Valley does not pay adjunct faculty a living wage, nor do they have access to health care ;

the college had recently discontinued discount for access to the health center for adjunct faculty;
adjunct faculty are no longer able to teach and work on an hourly basis at the College, interfering with their ability to tutor their students.
These factors were a disadvantage to the students at the school. (Complaint, Exhibit "B")

Two days later, Plaintiff received a Memorandum from the Executive Vice President of Administrative Services of Defendant, informing her that her employment was "terminated effective immediately." The memorandum specifically stated that the termination resulted from the August 20 letter written by Plaintiff to the League. The notice of termination charged that Plaintiff's letter "goes far beyond what could be considered responsible advocacy on behalf of the MVAFO, accused Plaintiff of a personal attempt to falsely discredit the College with the League, and claimed Plaintiff's conduct was "disruptive and not consistent with the best interests of the college." (Complaint, Exhibit "C")

Plaintiff's written employment agreement, a property right, gives her a right to respond to these charges. Defendant deprived her of this right. Her termination was a *fait accompli.*

Not satisfied with summarily depriving Plaintiff of her property right to employment at the School, Defendant threatened to bring criminal charges against Plaintiff. On September 9, 2013, she received an email from the Chief of Moraine Valley Police Department which stated:

> This to notify you that your further presence on campus; after your termination will be considered Criminal Trespass. It is the policy of the college to limit your visits to <u>your own labor issues alone</u>. All other issues that you feel you need to address will be directed to Vice President Duren or myself in his absence. Disruption or interference with normal college operations will not be accepted and violations after this notice may result in your arrest by the college police department. Any questions you may have, again may be directed to VP Duren or myself in his absence. Thanks - Chief Pat O'Connor (Complaint, Exhibit "D")

Subsequently, Defendant changed the locks on the MVAFO offices on the campus. These acts have made it virtually impossible for Plaintiff to fulfill her duties as President of the MVAFO.

# ARGUMENT

## I. PLEADING STANDARD

A complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Rule 8(a)(2), Federal Rules of Civil Procedure. Facts alleged in a complaint must be enough to raise a right to relief above the speculative level. *Bell Atlantic Corp. v. Twombly,* 127 S. Ct. 1955, 167 L. Ed. 2d 929, 550 U.S. 544 (2006). A complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that a defendant is liable for the misconduct alleged. In other words, the complaint must nudge Plaintiff's claims "across the line from conceivable to plausible.*" Ashcroft v. Iqbal*, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009).

All well pleaded facts in the Complaint must be taken as true, and all reasonable inferences must be drawn in favor of the Plaintiff. *Lachmund v. ADM Investor Services, Inc.,* 191 F. 3d 777, 782 (7th Cir. 1999). A complaint should be dismissed for failure to state a claim only if no relief could be granted under any set of facts that could be proved consistent with the allegations. *Lekas v. Briley,* 405 F. 3d 602, 606 (7th Cir. 2005).

The Complaint here more than satisfies that standard. It sets forth facts demonstrating that Defendant fired Plaintiff from her employment in direct retaliation for her exercise of constitutionally protected free speech rights on behalf of members of a collective bargaining unit of which she was president. Defendant further barred her from entry on the campus of the College, further interfering with her right to freely associate with the members of the MVAFO. Since Defendant's actions interfered with Plaintiff's property and liberty rights, due process required Defendant to provide Plaintiff with notice of the charges against her and a fair hearing, It failed to do provide Plaintiff with any semblance of due process. These facts clearly allege a most egregious violation of Plaintiff's constitutional rights. The Complaint further alleges that

3

Defendant's retaliation against Plaintiff is against the public policy of the State of Illinois.

## II. PLAINTIFF'S SPEECH IS PROTECTED BY THE FIRST AMENDMENT

Forty-five years ago, the Supreme Court considered a remarkably similar situation. Marvin Pickering was fired from his employment as a teacher by a in Will County, Illinois high school because he wrote a letter to a newspaper critical of his employer. There, as here, the school alleged the letter was "detrimental to the efficient operation and administration of the schools of the district," requiring his dismissal." *Pickering v Board of Education of Twp H.S. Dist 205,* 391 US 563, 567, 88 S Ct 1731,20 L Ed 2d 811 (1968) Unlike Robin Meade, Pickering was given a full hearing on the allegations against him. Robin Meade was given no process at all. There, as here, the statements in Pickering's letter were not directed against any individual, only the school district as a whole. Pickering's comments expressed a disagreement with the school board's manner of operating the school system. The Supreme Court found this difference of opinion clearly to concern an issue of general public interest. 391 U.S. at 571. The Supreme Court's decision in *P:ickering* unequivocally establishes that Robin Meade's letter to The League is fully protected by the First Amendment and cannot justify the action taken by Defendant discharging her from her employment. It is astonishing Defendant would claim that Plaintiff's speech is not protected by the First Amendment as that position has been rejected repeatedly by numerous courts.

It has been established for over ninety years that neither students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. *Tinker v. Des Moines Independent Community School District*, 393 US 503, 506, 89 S Ct 733, 21 L Ed 2d 731 (1969) Plaintiff's actions are entitled to special protection. Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us, not merely to the teachers concerned. The First Amendment does not tolerate laws that cast a pall of orthodoxy over the classroom. The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. The classroom is peculiarly the "marketplace of ideas."

The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth "out of a multitude of tongues, [rather] than through any kind of authoritative selection. (Citations omitted)" *Keyishian v. Board of Regents of the University of the State of New York,* 385 U.S. 589, 603, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967). "To impose any strait jacket upon the intellectual leaders in our colleges and universities would imperil the future of our nation." *Sweezy v. New Hampshire,* 354 U.S. 234, 250, 77 S Ct 1203, 1 L Ed 2d 1311 (1957)

Governmental action designed or intended to suppress or restrict the expression of specific speakers contradicts basic First Amendment principles. Government may not penalize an individual because it does not agree with the content of her speech. That Plaintiff was speaking out on behalf of others in her capacity as President of the MVAFO does not detract from her right to speak. It enhances that right. Plaintiff has a First Amendment right to associate with others for this purpose, and to speak on behalf of the collective bargaining organization of which she is president. *McLaughlin v. Tildenis,* 398 F.2d 287, 289-90 (7th Cir. 1968). Plaintiff's right to associate with other adjunct faculty members, and to speak out on their behalf may not be burdened in any way absent a compelling state interest. *NAACP v. Button,* 371 U.S. 45, 438, 83 S.Ct. 328, 9 L. Ed. 2d 405 (1963). "Implicit in the First Amendment freedoms of speech, assembly, and petition is the freedom to gather together to express ideas – the freedom of associate. *Christian Legal Society v Walker,* 453 F.3d 853, 861 (7th Cir. 2006) Governmental officials simply may not retaliate against associations and individuals for the exercise of their First Amendment rights. *Georgia Association of Educators v. Gwinnett County School District, 856 f.2d 142 (11th Cir. 1988)* That Plaintiff was acting in her capacity as President of the Adjunct Faculty at Morraine Valley reinforces her right to speak out on subjects concerning the operation of Moraine Valley Community College.

That she was speaking on behalf of an entity other than her employer establishes that her speech was not pursuant to her duties as an employee of Defendant. Quite the contrary, she was

5

speaking out as a private citizen on behalf of the union, not Defendant. *Chaklos v. Stevens,* 560 F. 3d 705, 712 (7th Cir. 2009)

The cases cited by Defendant recognize that Plaintiff's speech was protected. Defendant's motion is based upon the false premise that Plaintiff's letter to a third party was "a communication by a disgruntled part-time employee complaining about the terms and conditions of her employment." Plaintiff's letter was written on behalf of Defendant's Adjunct Faculty as a group. Not one word contained in that letter refers to Plaintiff's own employment situation. It speaks about the manner in which Defendant treats all of its Adjunct Faculty. This is clearly speech on a matter of public interest protected by the First Amendment.

The right of public employees to express their views on matters concerning the operation of the schools in which they are employed, and the relationship between the employer and its employees is well and long-established. *City of Madison Joint School District No. 8. v. Wisconsin Employment Relations Commission,* 429 U.S. 167, 174-75, 97 S Ct 421, 50 L Ed 2d 376 (1976). School teachers are entitled to speak out on public issues relating to their employment without fear of reprisal. Whether Plaintiff has tenure or any other job protection or not, Defendant may not penalize her for speaking out.

> For at least a quarter-century, this Court has made clear that even though a person has no "right" to a valuable governmental benefit and even though the government may deny him the benefit for any number of reasons, there are some reasons upon which the government may not rely. It may not deny a benefit to a person on a basis that infringes his constitutionally protected interests—especially, his interest in freedom of speech. For if the government could deny a benefit to a person because of his constitutionally protected speech or associations, his exercise of those freedoms would in effect be penalized and inhibited. *Perry v Sinderman*, 408 US 593, 597, 92 S Ct 2694 33 L Ed 2d 570 (1972)

*Connick v. Myers*, 103 S Ct 1684, 461 US 138, 75 L Ed 2d 708 (1983) did nothing to change these rights. Nothing in *Connick* purported to eliminate the right of school teachers to speak to others outside the school on matters of interest to the public. Further, the decision in *Connick* makes it clear that whether a teacher's speech is on a matter of public interest should not be

6

determined on a motion to dismiss. Rather, "whether an employee's speech addresses a matter of public concern must be determined by the content, form, and context of a given statement, as revealed by the whole record." 461 U.S. at 147-48.

The cases cited by Defendant are not to the contrary. Both *Volkman v. Ryker*, ___ F.3d ___, 2013 WL 6228316 at *4 (7th Cir. 2013) and *Cygan v. Wisconsin Department of Corrections*, 388 F.2d 1092, 1101 (7th Cir. 2004), make it clear that Plaintiff's letter falls squarely within speech protected by the First Amendment. Both Volkman's and Cygan's speech was found to be on a matter of public concern protected by the First Amendment. Their rights were found not to have been violated because of their unique status as employees of a paramilitary organization, where employers have more latitude in decisions regarding discipline and personnel regulations than ordinary government employers. *Volkman v. Ryker,* supra, at p. 4, *Cygan,* supra, at 1101. Those two plaintiffs did not prevail because the employer's interest in maintaining discipline was found to trump their right to speak. This Defendant does not and cannot claim the kind of potential disruption of its operations emanating from Plaintiff's speech as were present in those cases. Nor can Defendant make that claim in a motion to dismiss, as the balancing test mandated by *Pickering v Board of Education of Twp H.S. Dist 205*, supra, is a factual issue which may not be decided on a Motion to Dismiss.

Plaintiff's speech was not an internal complaint to anyone at Moraine Valley about her own employment. Her letter was written to a third party whose particular interest was the status and operation of community colleges. as was the situation in *Desrochers v. City of San Bernardino*, 572 F.3d 703, 714-15 (9th Cir. 2009). Plaintiff discussed the general nature of the relationship between a public institution and certain of its employees, regarding the manner in which it conducted its selection and treatment of adjunct faculty members. The manner in which a public institution selects its employees and spends public tax dollars is clearly a matter of public concern. *Gross v. Town of Cicero*, 619 F.3d 697, 704 (7th Cir. 2010), another case cited by Defendant, clearly establishes tat even though an employee has a personal stake in the subject

7

matter of the speech does not necessarily remove the speech from the scope of public concern. We must look at the "content, form, and context" of the speech to determine if the employee sought to raise issues of *public* concern or whether the employee sought to further only some *private* interest. 619 F.3d at 704. "[T]he purpose of the `public concern' requirement is to distinguish grievances of an entirely personal character from statements of broader interest concerning one's job, rather than to fix the boundaries of the First Amendment." *Eberhardt v. O'Malley,* 17 F.3d 1023, 1026 (7th Cir. 1994) There is nothing in Plaintiff's letter which sought to further any personal private interest of her own. Since she was not speaking about her own job position, her statements to the League for Innovation were fully protected by the First Amendment. *Eberhardt v. O'Malley, supra* . See also *Craig v. Rich Twp High School District 227,* ___ F. 3d ____ (No. 13-1398, 7th Cir. December 3, 2013, slip opinion, p. 8

Defendant's contention that Plaintiff's speech is not on a matter of public interest is also belied by the decision in *Taylor v. Carmouche*, 214 F.3d 788, 792 (7th Cir. 2000), citing Waters v Churchill, 511 US 661, 114 S Ct 1878, 128 L Ed 2d 686 (1994). In *Waters* the Supreme Court recognized:

> Government employees are often in the best position to know what ails the agencies for which they work; public debate may gain much from their informed opinions. Pickering, supra, at 572. And a government employee, like any citizen, may have a strong, legitimate interest in speaking out on public matters. In many such situations the government may have to make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished. 511 U.S. at 674.

Government employees such as Plaintiff have a right to comment on matters of public concern, including the general operations of her employer, without fear of reprisal from that employer. Whether Robin Meade had tenure or any other job protection, or was an employee at will, she cannot be discharged or disciplined in any way for exercising her rights to comment on matters of public concern. Defendant's attitude toward the content of Plaintiff's speech has no bearing upon her right to express her opinions. The inappropriate or controversial character of a statement is irrelevant to the question whether it deals with a matter of public concern. "[D]ebate

8

on public issues should be uninhibited, robust, and wide-open, and . . . may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials. *Rankin v. McPherson,* 483 U.S. 378, 383, 387, 107 S.Ct. 2891, 97 L.Ed.2d 315 (1987)

The Court of Appeals has summed up the issue thusly: "The test requires us to look at the point of the speech in question: was it the employee's point to bring wrongdoing to light? Or to raise other issues of public concern, because they are of public concern? Or was the point to further some purely private interest? *Linhart v. Glatfelter*, 771 F.2d 1004, 1010 (7th Cir 1985). Stated another way, the "linchpin of the inquiry is, thus, for both public concern and academic freedom, the extent to which the speech advances an idea transcending personal interest or opinion which impacts our social and/or political lives." *Dambrot v. Central Michigan University,* 55 F. 3d 1177, 1189 (6th Cir. 1995).

Plaintiff's letter to The League did not refer to any of Plaintiff's own private interests. It was speech on quintessential matters of public interest - the proper conduct of a governmental entity and its use of public funds. Her speech was fully and unconditionally protected by the First Amendment. It dealt with issues traditionally recognized as being of public interest and importance. *Chaklos v. Stevens,* 560 F. 3d 705, 713 (7th Cir. 2009); *Demers v. Austin,* ___ F.3d ___ (No. 11-35558, 9th Cir. September, 2013)

## II. DEFENDANT'S SUMMARY FIRING OF PLAINTIFF VIOLATED HER RIGHT TO DUE PROCESS

Defendant's claim that Plaintiff was entitled to no due process attendant to her firing is frivolous in the extreme. It is well settled that Plaintiff is entitled to a due process hearing before her employment can be taken away if she is deprived of either property or liberty. *Swank v Smart,* 898 F 2d 1247 (7th Cir 1990).

Plaintiff had a written employment agreement for August 19 through December 20, 2013, to teach the courses set forth therein. (Complaint, Exhibit "A") The Agreement itself indicates that it is binding upon both parties for its term, as it states: "This appointment cannot

9

be considered a commitment on the part of the college for a future assignment, since such commitments can only be made at a later date and depend upon student registration and faculty needs." This language makes it clear that it is binding upon both parties for the length of its term. Nothing in that agreement allows Defendant to summarily abrogate it.

The claim that Plaintiff has no property right in that written employment agreement has been rejected by the Courts for well over half a century. In *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972) the Supreme Court established that a legitimate claim of entitlement to employment is a property right protected by due process. The Court unequivocally held that a teaching appointment for a specific term secures a property right for that term, which cannot be taken away without due process. 408 U.S. at 577.

The Seventh Circuit Court of Appeals also recognized this proposition decades ago. "A term of employment set by contract has been recognized as a property interest which the state cannot extinguish without conforming to the dictates of procedural due process. . . . The existence of such a contractually-established property interest obligates the Board to grant plaintiff a hearing where he can be fully informed of the reasons for his nonretention and challenge their sufficiency *Hostrop v Board of Junior College Dist No 515*, 471 F 2d 488, 494 (7th Cir 1972). The cases cited by Defendant acknowledge that this is the law. *Cromwell v. City of Momence,* 713 F.3d 361 (7th Cir. 2013).

Defendant's attempts to shoe-horn Plainttiff's individual contract into the collective bargaining agreement with the Adjunct Faculty is untenable. Defendant's claim the provisions of the collective bargaining agreement somehow obliterate the plain language of Plaintiff's individual employment agreement is totally without foundation   A reading of the contract individually issued to Plaintiff demonstrates that the argument is, like Defendant's other arguments, wholly specious. The Agreement nowhere mentions the collective bargaining agreement. While Plaintiff may have other rights pursuant to the Collective Bargaining Agreement, her right to employment for the term established in her written contract stands on

10

its own.  In order for Defendant to extinguish that agreement, it must provide Plaintiff with notice and a hearing before terminating that agreement, and at such hearing, it must provide substantial evidence to support its decision.  *Nash v. Auburn University,* 812 F.2d 655, 667 (11th Cir. 1987)

Since Plaintiff has alleged that she was discharged in retaliation for her exercise of her free speech rights, she has demonstrated a violation of her due process right to a hearing.  In the words of the Supreme Court, the nonrenewal of a nontenured public school teacher's one-year contract may not be predicated on his exercise of First and Fourteenth Amendment rights." *Perry v. Sinderman, supra,* 408 U.S. at 598.  The Supreme Court reiterated that proposition in. *Mt. Healthy City Board of Ed v. Doyle*, 429 U.S. 274, 97 S. Ct. 568, 50 L. Ed. 2d 47  (1977).  Plaintiff's claims under the First and Fourteenth Amendments are not defeated by the fact that she did not have tenure. 429 U.S. at 283.  The right to a hearing is absolute, and compensable even where no actual damages have been suffered by the employee.  *Carey v. Piphus,* 435 U.S. 247*,* 266, 98 S. Ct 1042,  55 L Ed 2d 252 (1978).  Here, of course, Plaintiff has suffered the loss of the salary to which she was entitled under her employment agreement.

None of the cases cited by Defendant involve a written employment agreement.  They all depend upon the concept of tenure or some similar theory, apart from an individual written employment agreement such as Plaintiff possesses.  Several of them rely upon contract law from states other than Illinois.  None of those cases support Defendant's claim that it may summarily dismiss an individual who has a written employment agreement for a definite period of time.  As discussed by the Court of Appeals recently in a slightly different context, Illinois law establishes that a contract becomes a property right once a party accepts the others' offer. *Wigood v. Wells Fargo Bank, N.A.,* 673 F.3d 547, 565 (7th Cir. 2012).  Employment contracts are no different.

Defendant's action also impinges upon Plaintiff's liberty interests, which equally guarantee her a right to a hearing.  Robin Meade has a liberty interest in her profession as a

11

school teacher. Defendant's letter discharging her from her employment accuses her of dishonesty, claiming she engaged in "a personal attempt to falsely discredit Moraine Valley Community College and undermine the College's relationship with the League." (Complaint, Exhibit "C")  Such an accusation of dishonesty violates Plaintiff's liberty interest.  Such accusations entitle her to a hearing to confront those charges.  This right is wholly independent of whether she had a property interest in her employment.  *Lawson v. Sheriff of Tippecanoe County*, 725 F.2d 1136, 1139 (7th Cir. 1984)

In addition, Plaintiff has a liberty interest in her profession, and her continuation in that profession.  That interest also requires notice and an opportunity to refute the charges against her.  *Linhart v. Glatfelter,* 771 F.2d 1004, 1009 (7th Cir.1985).

Defendant's summary dismissal of Plaintiff two days after Plaintiff sent a letter to a third party discussing general issues regarding the operation of Moraine Valley was an egregious, unjustified deprivation of Plaintiff's due process rights.

### III. PLAINTIFF'S FIRING VIOLATED ILLINOIS PUBLIC POLICY

In *Kelsay v Motorola, Inc.*, 384 NE 2d  353, 357, 74 Ill 2d 172, 23 Ill Dec 559 (1978), the Illinois Supreme Court established a private right of action for any individual discharged from employment for a reason contraru to Illinois public policy.  Subsequently, in *Palmateer v International Harvester Co.,* 421 NE 2d  876, 85 Ill 2d 124, 52 Ill Dec 13 (1981), the Court reinforced the existence of the cause of action for retaliatory discharge.  It defined public policy as "what is right and just and what affects the citizens of the State collectively. It is to be found in the State's constitution and statutes and, when they are silent, in its judicial decisions." 421 N.E.2d at 879.

Plaintiff's cause of action for retaliatory discharge falls squarely within this definition. She alleges her discharge was in violation of the public policy set forth in the Illinois Personnel Records Act 820 ILCS 40/9, which prohibits an employer from keeping a record of Plaintiff's

political associations, communications or other nonemployment activities. Thus, the very maintenance of Plaintiff's communication to the League by Defendant, the express reason given for it in discharging Plaintiff is forbidden by that statute. Plaintiff also alleges that her discharge by Defendant violates provisions of the Illinois Educational Labor Relations Act, 115 ILCS 5/14, which prohibit Defendant from interfering with Plaintiff's in associating with other members of the collective bargaining unit of which she is the President.

Defendant claims that Plaintiff's cause of action for retaliatory discharge is not appropriate because she has not followed the "statutory procedures" attendant to the Illinois Educational Labor Relations Act. Once again, Defendant is wrong. It's argument was rejected by the Illinois Supreme Court in *Gonzalez v. Prestress Engineering Corp.,* 115 Ill.2d 1, 503 N.E.2d 308, 104 Ill.Dec. 751 (Ill., 1986). The plaintiff in *Gonzalez,* filed suit claiming his employer discharged him in retaliation for having filed an unsuccessful workers compensation claim. Defendant claimed Gonzalez' suit was preempted by the provisions of 29 U.S.C. sec. 185(a); that the collective bargaining agreement with his union required him to exhaust his remedies before he brought a tort suit for retaliatory discharge. The Illinois Supreme Court rejected that argument, stating that where a suit for retaliatory discharge is based on a duty and right firmly rooted and fixed in an important and clearly defined public policy, it is not preempted by labor laws. So too, where a suit for retaliatory discharge is based upon clearly defined public policy, it is an independent tort which is not restricted by various administrative or procedural strictures. In order to serve as a bar to a claim for retaliatory discharge, any statutory scheme must provide the discharged employee full relief for all damages emanating from the wrongful discharge. *Fisher v. Lexington Health Care, Inc.*, 703 N.E.2d 988, 993, 301 Ill.App.3d 547, 234 Ill.Dec. 888 (Second Dist., 1998). Defendant has made no showing that any statutory scheme will provide Plaintiff with full recompense to which she is entitled under the cause of action for retaliatory discharge.

Defendant's citation of *Board of Education of Roxana Community School District No. 1*

*v. Pollution Control Board*, 2013 IL 115473, 2013 WL 6115726 (Ill. 2013), is, like all of Defendant's other arguments, totally inapposite. That case did not deal with a claim of retaliatory discharge. It dealt with a school board's attempt to intervene in the Pollution Control Board's proceedings involving the certification of certain facilities as "pollution control facilities." The issues and reasoning of the Court in that case is wholly inapplicable to a situation involving a cause of action approved by the Illinois Supreme Court.

## CONCLUSION

Every argument made by Defendant in support of its motion to dismiss this case has been rejected by the Courts for years. All of those arguments fly in the face of clear precedent from the United States Supreme Court and the Courts of Appeals. Plaintiff's complaint clearly and properly alleges that she engaged in protected speech as a private citizen on issues of public importance. Defendant has retaliated against her by depriving her of both her property and liberty interests in violation of her constitutional right to due process. Defendant's actions are further egregious violations of Illinois' public policy, which support a claim for retaliatory discharge.

Each count of Plaintiff's Complaint validly states a claim upon which relief may be granted. Defendant's Motion to Dismiss must be denied.

S/Wayne B. Giampietro

Plaintiff's Attorney

Of counsel:
Poltrock & Giampietro
123 W. Madison St., Suite 1300
Chicago, Illinois 60602
312 236 0606; Fax 312 236 6492
wgiampietro@wpglawyers.com
ARDC # 0947776