# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ROBIN MEADE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 13 C 7950 |
| | ) |
| MORAINE VALLEY COMMUNITY | ) |
| COLLEGE, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Defendant Moraine Valley Community College's (College) motion to dismiss. For the reasons stated below, the motion to dismiss the federal claims is granted, and the remaining state claims are dismissed without prejudice.

## BACKGROUND

Plaintiff Robin Meade (Meade) was allegedly employed by the College pursuant to a written employment agreement (Employment Agreement) as an adjunct faculty member for the first semester of the 2013-2014 school year, with an alleged further understanding that she would also teach during the second semester of that year. Meade was allegedly the President of the Moraine Valley Adjunct Faculty

1

Organization (MVAFO). According to Meade, in November 2012, an officer of the College asked Meade to prepare a letter (Letter) in her capacity as President of MVAFO supporting the College's affiliation with the League for Innovation in the Community College (League). Meade claims that she refused to write the Letter and instead wrote a letter on behalf of MVAFO members (Meade Letter) setting forth the position of MVAFO members regarding the College's affiliation with the League. Meade allegedly sent the Meade Letter only to the League.

In August 2013, Andrew Duren (Duren), the Executive Vice President of the College, allegedly wrote a letter to Meade (Termination Letter) terminating Meade's employment with the College. Meade claims that Duren included false statements in the Termination Letter and terminated Meade's employment in retaliation for her exercise of her First Amendment right to freedom of speech.

Subsequent to Meade's termination, the College also allegedly sent Meade an Official Notice, which informed Meade that she was forbidden from appearing on campus and that she would be arrested if she appeared on campus for issues other than her own labor issues. Meade contends that the College improperly interfered with her performance as President of the MVAFO and deprived the members of MVAFO of the services of their President. Meade included in her complaint a claim brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging retaliation for the exercise of the First Amendment right to freedom of speech (Count I), a Section 1983 due process claim (Count II), and a claim premised on an alleged violation of Illinois public policy (Count III). The College now moves to dismiss all claims.

## LEGAL STANDARD

In ruling on a motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) (Rule 12(b)(6)), the court must draw all reasonable inferences that favor the plaintiff, construe the allegations of the complaint in the light most favorable to the plaintiff, and accept as true all well-pleaded facts and allegations in the complaint. *Appert v. Morgan Stanley Dean Witter, Inc.*, 673 F.3d 609, 622 (7th Cir. 2012); *Thompson v. Ill. Dep't of Prof'l Regulation*, 300 F.3d 750, 753 (7th Cir. 2002). A plaintiff is required to include allegations in the complaint that "plausibly suggest that the plaintiff has a right to relief, raising that possibility above a 'speculative level'" and "if they do not, the plaintiff pleads itself out of court." *E.E.O.C. v. Concentra Health Services, Inc.*, 496 F.3d 773, 776 (7th Cir. 2007)(quoting in part *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (2007)); *see also Morgan Stanley Dean Witter, Inc.*, 673 F.3d at 622 (stating that "[t]o survive a motion to dismiss, the complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," and that "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged")(quoting *Ashcroft v. Iqbal*, 556 U.S. 662 (2009))(internal quotations omitted).

## DISCUSSION

The College argues that Meade has not alleged sufficient facts to state a valid

3

Section 1983 retaliation claim or a due process claim. The College also requests that the court decline to exercise supplemental jurisdiction over the remaining state law claim. (Mem. Dis. 12).

I. Section 1983 Retaliation Claim (Count I)

The College argues that Meade has not alleged facts that suggest that the Meade Letter is protected by the First Amendment. The First Amendment "right of free speech is not absolute; it is the point of balance between competing values, in this case that of public criticism of public officials and that of sound management of a public agency." *Fuerst v. Clarke*, 454 F.3d 770, 774 (7th Cir. 2006). A plaintiff who was a "public employee," that brings a First Amendment retaliation claim must show, "at a minimum, that the speech being retaliated against" is "constitutionally protected, which means that the speech must involve a matter of 'public concern.'" *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013)(quoting in part *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th Cir. 2009)). The determination of "[w]hether a statement rises to the level of public concern is a question of law, and in answering this question [the court should] look to the content, form, and context of the statement." *Id.* In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), "the Supreme Court held that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Chrzanowski v. Bianchi*, 725 F.3d 734, 737-38 (7th Cir. 2013)(quoting

4

*Garcetti*, 547 U.S. at 421)(internal quotations omitted); *see also Swetlik v. Crawford*, 2013 WL 6731780 (7th Cir. 2013)(explaining that in *Garcetti* the Court held that "a public employee's statements made pursuant to official duties are not made as a private citizen for the purposes of the First Amendment").

The College indicates that it is not seeking dismissal based upon the principles set forth in *Garcetti*. (Mem. Dis. 7 n.2); (Reply 3); *see also, e.g., Swetlik*, 2013 WL 6731780, at *6 (noting that the statements made by the plaintiff "were made in his capacity as a union member, not as part of his official duties as a police detective"). The College concedes, for the purposes of the instant motion, that Meade was speaking in her role as President of the MVAFO rather than in her role as an adjunct professor. The College argues, however, that regardless of whether Meade was speaking in her capacity as an adjunct professor or in her capacity as the President of MVAFO, the pleadings do not suggest that Meade was speaking about a matter of public concern. *See Shefcik v. Village of Calumet Park*, 532 F.Supp. 2d 965, 974 (N.D. Ill. 2007)(explaining that for a First Amendment retaliation claim "a public employee" must show that "the employee spoke as a citizen on matters of public concern"); *Diadenko v. Folino*, 2013 WL 6680930, at *4 (7th Cir. 2013)(indicating that a public employee is protected when speaking as a citizen, but that the employee must have also been "speaking on a matter of public concern").

The court can consider the content of the Meade Letter for the purpose of ruling on the instant Rule 12(b)(6) motion since it is referenced in the complaint and

5

is attached to the complaint as an exhibit. Fed. R. Civ. P. 10(c). In the Meade Letter, Meade does not speak out to expose risks to public safety, or wrongdoing by public employees, or otherwise raise matters that would be of public concern. In the Meade Letter, Meade discusses private workplace concerns relating to matters such as her dissatisfaction with the division of resources and benefits between full-time faculty and adjunct faculty at the College. Although Meade references in a cursory manner concerns about "making it difficult for students to achieve completion in an area of study," (M Let. 2), it is apparent from a review of the entire letter that Meade is merely airing her unhappiness with personnel decisions by the College relating to herself and other adjunct professors. Meade's cursory invocation of concerns about students did not transform the Meade Letter into a statement about a matter of public concern. Nor does Meade's conclusory allegation in her complaint that she was "comment[ing] on matters of public interest" make it so in light of the rest of the pleadings presented by Meade. *See Atkins v. City of Chicago*, 631 F.3d 823, 832 (7th Cir. 2011)(stating that a plaintiff "can plead himself out of court by pleading facts that show that he has no legal claim").

As the Seventh Circuit explained in *Taylor v. Carmouche*, 214 F.3d 788 (7th Cir. 2000), if the plaintiffs "were protesting in their capacity as employees, not in their capacity as citizens," then "[t]heir complaints related to their jobs," and their statements are not matters of public concern. *Id.* at 792. That is exactly what the pleadings suggest in this case. The pleadings do not suggest that Meade was speaking out on a matter of public concern in the Meade Letter. She was merely

6

commenting upon her dissatisfaction with personnel decisions by the College relating to issues such as the allocation of resources. Although Meade purports to speak on behalf of other adjunct professors, not just herself, Meade clearly was merely addressing the adjunct professors' private interests and personal concerns relating to the terms of their employment. Meade suggests in her pleadings that the Meade Letter related to "management of the labor force," and the "normal workplace grievances, and statements made in an employment setting about how the tasks should be carried out," which the Seventh Circuit has found not to constitute a matter of public concern. *Id.*; *see also Craig v. Rich Tp. High School Dist. 227*, 736 F.3d 1110, 1116 (7th Cir. 2013)(explaining that "an employee's purely personal gripe about how the employer's policy affects the employee" is generally not a matter of public concern, whereas "an employee's attempt to notify the public of a work-related issue about which the public is concerned" is a matter of public concern"). Meade has not shown that the Meade Letter "dealt with a subject of general interest to the public." *Craig*, 736 F.3d at 1116. Therefore, the College's motion to dismiss the Section 1983 retaliation claim (Count I) is granted.

## II. Section 1983 Due Process Claim (Count II)

The College argues that Meade has not alleged sufficient facts to state a valid Section 1983 due process claim. Meade contends that she was not provided with a due process hearing before her termination of employment. (Ans. 9). To state a

7

valid Section 1983 due process claim, a plaintiff "must allege a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). The College argues that Meade has not alleged facts that suggest that she had a cognizable property interest in her continued employment. An individual can obtain a property interest in continued employment: (1) "by an independent source such as state law securing certain benefits," or (2) "by a clearly implied promise of continued employment." *Id.* (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003) (internal quotations omitted).

Meade argues that her Employment Agreement gave her a property interest in continued employment with the College. However, a review of the terms of the Employment Agreement, which is attached as an exhibit to the complaint, clearly shows that no assurance of continued employment was included in the agreement. The Employment Agreement in no way limits the discretion of the College. The Employment Agreement states: "Duly established and published Board policy is expressly made a part of this agreement by reference and shall be binding upon both parties." (Compl. Ex. A). The Employment Agreement also states that it "is not a full-time employment contract," and that "[s]hould the need for indicated service not materialize, th[e] agreement automatically becomes null and void." (Compl. Ex. A). The Employment Agreement further provides that the "appointment cannot be considered a commitment on the part of the College for a future assignment." (Compl. Ex. A). Such terms are far from indicating a clearly implied promise of

continued employment that vested in Meade a property interest in future employment. Nor does Illinois state law provide Meade with a property interest in continued employment. Under Illinois law, "employment relationships in Illinois are presumed to be at will," and Meade has not presented allegations that would indicate that such a presumption has been rebutted in regards to her employment. *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013). The Seventh Circuit has explained that "[g]enerally, the terms of employment must provide that termination will only be 'for cause' or 'otherwise evince mutually explicit understandings of continued employment.'" *Cromwell*, 713 F.3d at 364 (quoting *Omosegbon v. Wells*, 335 F.3d 668, 674 (7th Cir. 2003)). In the instant action, the Employment Agreement contains no term providing for termination only for cause, and the complaint lacks allegations that would suggest any mutually explicit understanding as to continued employment ever existed. The court also notes that the College claims that a policy of the College that is incorporated into the Employment Agreement is the preservation of the "at will" employment status. The College also contends that Meade is also bound by a collective bargaining agreement that preserves the "at-will" employment status.

Meade cites *Hostrop v. Board of Junior College Dist. No. 515, Cook and Will Counties, and State of Ill.*, 471 F.2d 488 (7th Cir. 1972) in support of her proposition that an employment contract creates a property interest in continued employment. (Ans. Dis. 10). However, in *Hostrop*, the employment agreement at issue was for

9

full-time tenured employment, unlike in the instant action. *Id.* at 489-90, 494. Also, in *Hostrop*, the agreement involved a multi-year contract, unlike in the instant action. *Id.* Further, in *Hostrop,* the agreement did not have qualifying language such as the Employment Contract in this case. *Id. Hostrop* is therefore distinguishable from the instant action. Meade also argues that she has a liberty interest in her profession as a teacher. (Ans. 11-12). However, the allegations in the complaint merely suggest that Meade was terminated from her job with the College. The allegations do not suggest that the College in any way materially prevented Meade from pursuing her chosen profession at other academic institutions, or made any stigmatizing comments, that were disclosed to the public. *See Palka*, 623 F.3d at 452 (explaining elements of an occupational-liberty claim); *Lawson v. Sheriff of Tippecanoe County, Ind.*, 725 F.2d 1136, 1138 (7th Cir. 1984)(stating that "the courts have found a deprivation of liberty when the employee was fired for a publicly announced reason that impugned his moral character").

The court also notes that, to the extent that the contents of Meade's Termination Letter are now part of the public record in this case, namely that the Meade Letter was "replete with misrepresentations and falsehoods," that Meade made a "personal attempt to falsely discredit the [College] and undermine the College's relationship with the League," and that Meade's conduct was "disruptive and not consistent with the best interests of the College," it was Meade herself who filed the Termination Letter with her complaint in this case and placed its contents in

the public forum. (Meade Let. 1-2). Thus, since Meade has failed to allege facts that suggest that Meade was deprived of a cognizable property interest without due process, she has failed to state a valid Section 1983 due process claim. Therefore, the College's motion to dismiss the Section 1983 due process claim (Count II) is granted.

III. State Law Claims (Count III)

Meade does not indicate in the complaint that this court has diversity subject matter jurisdiction over the state law claims. Thus, having resolved the federal claims in this case, the court must determine whether to continue to exercise supplemental jurisdiction over the remaining state law claims. Once the federal claims in an action no longer remain, a federal court has discretion to decline to exercise supplemental jurisdiction over any remaining state law claims. *See Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1251-52 (7th Cir. 1994)(stating that "the general rule is that, when all federal-law claims are dismissed before trial, the pendent claims should be left to the state courts"). The Seventh Circuit has indicated that there is no "'presumption' in favor of relinquishing supplemental jurisdiction. . . ." *Williams Electronics Games, Inc. v. Garrity*, 479 F.3d 904, 906-07 (7th Cir. 2007). The Seventh Circuit has stated that, in exercising its discretion, the court should consider a number of factors, including "the nature of the state law claims at issue, their ease of resolution, and the actual, and avoidable, expenditure of judicial

11

resources. . . ." *Timm v. Mead Corp.*, 32 F.3d 273, 277 (7th Cir. 1994).

The court has considered all of the pertinent factors and, as a matter of discretion, the court declines to exercise supplemental jurisdiction over the remaining state law claims. Such claims are therefore dismissed without prejudice.

## CONCLUSION

Based on the foregoing analysis, the College's motion to dismiss the Section 1983 claims (Counts I and II) is granted, and the state law claims (Count III) are dismissed without prejudice.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: January 31, 2014