

A True Copy
Teste:

_____
Deputy Clerk
of the United States
Court of Appeals for the
Seventh Circuit

In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 14-1217

ROBIN MEADE,

                          *Plaintiff-Appellant*,

v.

MORAINE VALLEY COMMUNITY COLLEGE,

                          *Defendant-Appellee*.

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13 C 7950 — **Samuel Der-Yeghiayan**, *Judge*.

_____

ARGUED SEPTEMBER 8, 2014 — DECIDED OCTOBER 30, 2014

_____

Before WOOD, *Chief Judge*, and POSNER and HAMILTON, *Circuit Judges*.

WOOD, *Chief Judge*. In August 2013, Robin Meade wrote a letter to the League for Innovation in the Community College about her employer, Moraine Valley Community College. The letter was not complimentary. Meade, an adjunct faculty member at Moraine Valley, leveled multiple charges at the college regarding its poor treatment of adjuncts. These practices, she charged, harmed Moraine Valley's students.

Case: 1:13-cv-07950 Document #: 26 Filed: 11/21/14 Page 2 of 14 PageID #:148
Case: 14-1217      Document: 00712424564         Filed: 11/21/2014      Pages: 14

2	No. 14-1217

She signed the letter in her capacity as president of the Moraine Valley Adjunct Faculty Organization, a union representing the college's adjunct faculty. Two days later, Moraine Valley fired Meade. Its explanation for doing so was unusually frank: it sent her a written notice explicitly citing Meade's letter as the reason for its action. A few weeks later, the college warned Meade that it would regard her further presence on campus as criminal trespass.

Believing that Moraine Valley retaliated against her for exercising her right to freedom of speech and violated her due process rights, Meade sued the college in federal district court under 42 U.S.C. § 1983. Moraine Valley persuaded the district court to dismiss for failure to state a claim. The court first concluded that Meade's letter did not address matters of public interest and thus could not serve as the basis of a First Amendment retaliation claim. It rejected Meade's due process claim for lack of a cognizable property interest in her employment at the college. Both of these conclusions are incorrect, and so we must return this case to the district court for further proceedings.

## I

Because this appeal comes to us from a dismissal for failure to state a claim, we construe Meade's complaint in the light most favorable to her and draw all reasonable inferences in her favor. *Park v. Ind. Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012). In August 2013, Meade received a one-page document that set out the schedule of the courses she was assigned to teach that autumn at Moraine Valley, a community college in Palos Hills, Illinois. At the top of the document were the words "EMPLOYMENT AGREEMENT"; it then listed three classes along with their start and end

No. 14-1217 3

dates (August 19 through December 20), as well as Meade's salary for the semester. At the bottom of the page, the words "employment agreement" appeared again, followed by two paragraphs of text. The text first noted that the agreement incorporated "[d]uly established and published Board policy," which was to be binding on the signing parties (Meade and Moraine Valley's dean). It then stated that the document was "not a full-time employment contract" and added "Should the need for indicated service not materialize, this agreement automatically becomes null and void." Finally, it said that the agreement could not "be considered a commitment on the part of the College for a future assignment."

　　Shortly after receiving this document, Meade composed her letter to the League for Innovation in the Community College (LICC). Under the letterhead of the Moraine Valley Adjunct Faculty Organization (MVAFO), which she headed, Meade began by referring to a request the college had made to Meade and other union leaders to write letters supporting Moraine Valley's reapplication for the LICC board. Meade explained in some detail why she did not wish to do so. She accused the college of treating adjunct faculty as "a disposable resource" and "a separate, lower class of people." As evidence, Meade cited the fact that the administration allocated more resources to full-time faculty and staff, often leaving adjuncts "to fend for themselves." She also noted that adjuncts were teaching 60% of Moraine Valley's classes, meaning that student success rates depended more on adjunct instructors than their full-time equivalents. She criticized the college's decision to prohibit adjuncts from working on an hourly basis. As a result, Meade wrote, adjuncts could not spend extra time tutoring students. This contributed, she implied, to the problem of high failure rates in developmen-

Case: 1:13-cv-07950 Document #: 26 Filed: 11/21/14 Page 4 of 14 PageID #:150
Case: 14-1217   Document: 00712424564   Filed: 11/21/2014   Pages: 14

4                                                              No. 14-1217

tal classes at the college. Elsewhere in the letter, Meade wrote that the college was underpaying adjuncts, denying them access to health care, and denying them certain classes without explanation. All of this, Meade told LICC, "has created a chilling effect which affects adjunct performance and erodes the confidence the idyllic atmosphere and beautiful buildings and grounds strive to project."

Meade sent her letter to LICC on August 20, 2013. On August 22, she received a notice of job termination from Andrew Duren, Moraine Valley's executive vice president. Duren told Meade that LICC had sent a copy of her letter to the college, and the college did not like what it saw. The letter was "replete with misrepresentations and falsehoods," Duren wrote, along with "irresponsible rhetoric" that was "disruptive and not consistent with the best interests of the College." Duren added that the letter was not responsible advocacy on behalf of Meade's union, but rather "a personal attempt to falsely discredit" the college and undermine its relationship with LICC. Because this behavior did not coincide with the college's best interests, Duren wrote, Meade's job there was terminated effective immediately. A little over two weeks later—the record is silent about what happened in the interim—Meade received an email from the chief of Moraine Valley's police force announcing that any future visits she made to the college campus would be considered criminal trespass.

Meade responded to these events by suing Moraine Valley. Her complaint set out three theories, two of which concern us here. (The district court dismissed without prejudice a third claim under Illinois law; Meade has not appealed from that ruling.) First, Meade alleged that her firing and

No. 14-1217 5

banishment from campus were in retaliation for her exercise of her First Amendment right to free speech (applicable to the state through the Fourteenth Amendment). Second, she contended that her employment contract for Fall 2013 created a property interest, which Moraine Valley revoked without due process. As we noted earlier, the district court granted Moraine Valley's motion to dismiss for failure to state a claim, and Meade now appeals.

## II

We review a district court's dismissal for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) *de novo*. *Batson v. Live Nation Entm't*, 746 F.3d 827, 830 (7th Cir. 2014).

Meade begins her appeal with her retaliation claim, and so do we. Meade's ability to press this claim depends on whether the speech that prompted her termination was constitutionally protected. *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006). The first part of that inquiry, and the one the district court found dispositive, asks whether Meade's speech related to a matter of public concern. *Id.* A teacher such as Meade cannot be fired for exercising her right of free speech on such matters. *Pickering v. Bd. of Educ. of Twp. High Sch. Dist. 205, Will Cnty.*, 391 U.S. 563, 574 (1968). If, however, Meade's overall point in writing the letter was to express a purely personal grievance, then the First Amendment will not help her. *Kristofek v. Vill. of Orland Hills*, 712 F.3d 979, 986 (7th Cir. 2013); see also *Connick v. Myers*, 461 U.S. 138, 147 (1983). The Supreme Court has defined "public concern" to mean "legitimate news interest," or "a subject of general interest and of value and concern to the public at the time of publication." *City of San Diego v. Roe*, 543 U.S. 77, 83–84 (2004) (per curiam). In deciding whether Meade's letter fits this description,

we consider its content, its form, and the context in which it was written. *Connick*, 461 U.S. at 147–48. Of these three considerations, content is the most important. *Chaklos v. Stevens*, 560 F.3d 705, 714 (7th Cir. 2009). We also must take care not to place undue weight on Meade's apparent motive in writing her letter, in particular whether it was personal or not. Rather, we look at "the overall *objective* or *point*" of the letter to determine whether it discussed matters of public concern. *Kristofek*, 712 F.3d at 985. (One side note: although *Garcetti* held that a public employee's statements made pursuant to her official duties cannot provide the basis for a retaliation claim, see 547 U.S. at 421, Moraine Valley concedes that Meade had no employer-imposed duty to write her letter.)

Applying these standards, we have no trouble concluding that Meade's letter discussed several matters of public concern. In fact, the letter contained almost no content personal to Meade. Although she informed LICC that she had turned down Moraine Valley's request to support its reapplication as an LICC board member, she said nothing about her own experiences or gripes. Rather, she emphasized that she was writing as the head of a union whose members were concerned about the way the college treated them as a group. The letter's multiple references to the difficulties facing all Moraine Valley's adjuncts remove it from the realm of the purely personal. And Meade is not alone in expressing concern about the treatment of adjuncts. Colleges and universities across the country are targets of increasing coverage and criticism regarding their use of adjunct faculty. See, *e.g.*, Sydni Dunn, *Colleges Are Slashing Adjuncts' Hours to Skirt New Rules on Health-Insurance Eligibility*, CHRON. OF HIGHER EDUC. (Apr. 22, 2013), http://chronicle.com/article/Colleges-Curb-Adjuncts-Hours/138653; Rachel L. Swarns, *Crowded*

No. 14-1217 7

*Out of Ivory Tower, Adjuncts See a Life Less Lofty*, N.Y. Times, Jan. 20, 2014, at A11; Lewis Wallace, *Adjunct Professors Demand Inclusion in Health Care Reforms*, WBEZ NEWS (Mar. 11, 2013), http://www.wbez.org/news/adjunct-professors-demand-inclusion-health-care-reforms-106034. (All websites cited in this opinion were last visited Oct. 29, 2014.)

Meade's attempt to link the treatment of adjunct faculty to student performance underscores the public dimension of her comments. She twice remarked on the effect of ill treatment of adjuncts on student performance and provided evidence for this accusation by reporting the percentage of classes that adjuncts teach at Moraine Valley. She then observed that adjuncts' inability to teach and work on an hourly basis had compromised their ability to tutor students (at least for compensation, we assume). It is difficult to see how any part of this discussion could be considered purely personal to Meade, or of zero interest to the public. The people who attend Moraine Valley, along with their families and others who live in the area, no doubt want to know if this practice poses a threat to student performance.

The district court did not understand the letter this way, apparently because Meade herself taught as an adjunct and thus would be affected by any changes in policy. But such an approach disregards *Pickering*, 391 U.S. at 571–72, in which the Supreme Court noted that public employees as a class may often be the best informed on matters of public concern related to their jobs. More generally, the district court failed to consider the broader nature of Meade's comments. It criticized Meade's discussion of student interests as cursory—a flaw that undermined the public quality of the comments, it thought. Yet we have never held that speech that is partly

Case: 1:13-cv-07950 Document #: 26 Filed: 11/21/14 Page 8 of 14 PageID #:154
Case: 14-1217     Document: 00712424564     Filed: 11/21/2014     Pages: 14

8                                                                No. 14-1217

about a matter of public interest but also touches on private concerns is without constitutional protection. Indeed, we held the opposite in *Craig v. Rich Twp. High Sch. Dist. 227*, 736 F.3d 1110 (7th Cir. 2013). There, a high school guidance counselor's book of relationship advice contained provocative, racy sections that would not in isolation be considered of interest to the public. But we concluded that the book as a whole covered topics of public concern insofar as it explored the dynamics of adult relationships; an array of recent articles showed that the public was indeed interested in the topic. Meade's letter presents an even stronger case for protection. Even if the district court were correct that Meade's references to student success were cursory, the remainder of her letter still discussed the treatment of adjuncts, which easily qualifies as a topic of public interest. As we said in *Craig*, a topic of public concern need not "relate to an issue of exceptional significance" or "address a topic of great societal importance." *Id.* at 1116.

Moraine Valley's arguments to the contrary focus in part on Meade's motive in writing the letter, but that is beside the point. As we already have explained, a person's motive is not dispositive in the analysis of whether a communication discusses issues of public concern. In a case such as this one, where the content of the letter touches on multiple topics in which the public would be interested, the writer's motive (whatever it may be—recall that this case is before us on a motion to dismiss and the record contains little beyond the letter itself) is useful only to the extent that it may shed light on ambiguous statements. Moraine Valley also argues that Meade's letter warrants no protection because it was sent privately. But the college cites no authority for such an unqualified proposition. Worse, it fails to acknowledge that

No. 14-1217 9

Meade was transmitting her criticisms to an organization (the LICC) that includes 800 member institutions and 160 corporate partners. See *About the League*, LEAGUE FOR INNOVATION IN THE COMMUNITY COLLEGE, http://www.league.org/league/about/about_main.htm. That is hardly confidential. And quite obviously, the letter got around; despite its ostensibly private nature, Moraine Valley had a copy and fired Meade within two days of her sending it.

The content of Meade's letter places it squarely among matters that are of public concern. The district court thus erred in concluding that her speech was not constitutionally protected. Because it resolved the case at that point, the court did not address the other two issues her case raises: whether the speech was a substantial or motivating factor in the retaliatory action, and whether the defendant can show that it would have taken the same action without the existence of the protected speech. See *Chaklos*, 560 F.3d at 711. We think it best for the district court to have the first look at those issues on remand.

### III

Our conclusion is similar with regard to Meade's procedural due process claim. In her complaint, Meade alleged that Moraine Valley should not have fired her without providing her with notice and an opportunity to contest the decision. Meade has to satisfy three requirements in order to show that Moraine Valley violated her right to due process. The first, and the only one that concerns us here, is demonstration of a cognizable property interest. (The other two requirements are that the defendant deprived her of that interest and that it did so in a way that violated due process standards. *Price v. Bd. of Educ. of City of Chicago*, 755 F.3d 605,

607 (7th Cir. 2014).) To demonstrate a cognizable property interest in her job at Moraine Valley, Meade must be able to show that she had some legitimate expectation of continued employment at the college. That expectation can arise through contractual language limiting the college's discretion to fire her. See *Kodish v. Oakbrook Terrace Fire Prot. Dist.*, 604 F.3d 490, 494 (7th Cir. 2010); see also *Perry v. Sindermann*, 408 U.S. 593, 601 (1972) (a plaintiff can show an expectation of entitlement to employment through "mutually explicit understandings" between employee and employer). State law (here, that of Illinois) defines the extent of Meade's property interest in her continued employment. *Redd v. Nolan*, 663 F.3d 287, 296 (7th Cir. 2011).

Meade's one-page employment agreement is a spare document. It has two components: first, a listing of classes, with dates, course numbers, and Meade's pay for the semester; and second, four sentences of legalistic language that set forth a series of caveats. At no point does the agreement state that Meade's employment could be terminated only for cause, nor does it say that her employment was at-will and terminable at any time. The latter would have been unnecessary, in light of Illinois's well-settled rule that "the terms of employment must provide that termination will only be for cause or otherwise evince mutually explicit understandings of continued employment" in order for there to be a property interest in employment. *Cromwell v. City of Momence*, 713 F.3d 361, 364 (7th Cir. 2013) (internal quotation marks omitted). Meade's agreement, however, contained language that "otherwise evinces" such a mutual understanding. The course numbers and corresponding dates define what work Meade was to do for Moraine Valley, during what specific period, and for what pay.

Case: 1:13-cv-07950 Document #: 26 Filed: 11/21/14 Page 10 of 14 PageID #:156
Case: 14-1217    Document: 00712424564    Filed: 11/21/2014    Pages: 14

No. 14-1217 11

We long ago observed that "[a] term of employment set by contract has been recognized as a property interest which the state cannot extinguish without conforming to the dictates of procedural due process." *Hostrop v. Bd. of Junior Coll. Dist. No. 515*, 471 F.2d 488, 494 (7th Cir. 1972). In Illinois, there is an exception to the presumption that employment is at-will for work that is of a specified, fixed duration. See, *e.g.*, *Mitchell v. Jewel Food Stores*, 568 N.E.2d 827, 835 (Ill. 1990) ("It is still the general rule, that an employment relationship without a fixed duration is terminable at will by either party." (internal quotation marks omitted)); *Johnson v. George J. Ball, Inc.*, 617 N.E.2d 1355, 1358 (Ill. App. 1993) ("In general, an employment contract is terminable at will by either party unless the contract itself specifies a different durational term.") (citing *Duldulao v. St. Mary of Nazareth Hosp. Ctr.*, 505 N.E.2d 314, 317 (Ill. 1987)). The course schedule on Meade's employment agreement provided specific starting and ending dates for her teaching responsibilities and told her what she would be paid for doing so. This was sufficient to provide Meade with an expectation of employment at Moraine Valley during the specified time, and thus a cognizable property interest in working at the college during that period. (Notably, the employment agreement cautioned that she had no guarantee of *future* employment; thus, she could not have complained under the Due Process Clause if the college had simply announced that it was not going to renew her contract for the spring semester.)

In concluding otherwise, the district court did not adequately take into account Illinois's rule that employment with a fixed duration provides an exception to the at-will presumption. It sought instead to distinguish the facts of *Hostrop* from Meade's while ignoring our recognition there

that "[a] person is deprived of property if the government extinguishes his legitimate claim of entitlement to his job," 471 F.3d at 494, and that "[a] term of employment set by contract has been recognized as a property interest which the state cannot extinguish without conforming to the dictates of procedural due process." *Id.* The district court also pointed to our acknowledgment in *Cromwell* of the at-will presumption for employment in Illinois. But we were not dealing in *Cromwell* with employment of fixed length. The employee in that case relied not on a contract as the source of his expectation of continued employment but on municipal disciplinary regulations. See Cromwell, 713 F.3d at 362–63. We also reiterated in *Cromwell* that terms of employment can create a property interest if they "evince mutually explicit understandings of continued employment." *Id.* at 364. In this case, that mutual understanding is present in Meade's specified duration of employment.

There was also a collective bargaining agreement (CBA) between Meade's union and Moraine Valley. Although it did not feature in the district court's decision, the parties devote some attention on appeal to the question whether the CBA extinguished any property interest she may have had in her employment. The CBA was an exhibit to the college's motion to dismiss. We may consult it because Meade did not object to its consideration. It provides that MVAFO members are at-will employees and that Moraine Valley can terminate them at its discretion. Moraine Valley argues that Meade was subject to the CBA, which deemed her an at-will employee and thus left her without a property interest in her employment at the college. But Meade had a more specific agreement with the college, and her personal employment agreement says nothing about the CBA. It does incorporate

"[d]uly established and published Board policy," but there is nothing to suggest that this general language included the CBA. We cannot assume, adversely to Meade, that it did. The relation between the CBA and Meade's own employment agreement is not clear from the pleadings, and so we cannot conclude at this stage that the CBA blocks Meade's claim.

The same is true of other language in Meade's employment agreement. Although Meade agreed that she was not a full-time employee and that she was not entitled to fringe benefits, doing so did not automatically make her an at-will employee. Nor did the agreement's provision permitting the college to declare the agreement null and void should the need for Meade's services "not materialize" have that effect. This passage might mean, for example, that Moraine Valley was permitted to cancel the agreement only if an adequate number of students failed to register for Meade's classes. It does not provide a basis to dismiss Meade's complaint for failure to state a claim. The same is true of the agreement's language providing that it was not a commitment for a future assignment; Meade is arguing only that she had a property interest in her assignment to work for the Fall 2013 semester.

On a final note, Meade argues in her opening brief that Moraine Valley stigmatized her by accusing her of dishonesty in the letter terminating her employment. This stigma, she argues, impinged upon her liberty interests and was defamatory *per se*. The college points out that Meade did not mention stigmatization in her complaint, and on that basis it argues that it could not have been on notice that she intended to raise it. See *Joyce v. Morgan Stanley & Co., Inc.*, 538 F.3d 797,

14                                                         No. 14-1217

801–02 (7th Cir. 2008) (plaintiff "may not amend the complaint on appeal to state a new claim" (internal quotation marks omitted)). Yet Meade did assert that she suffered harm to her reputation. This theory, however, runs squarely into the Supreme Court's decision in *Paul v. Davis*, 424 U.S. 693 (1976), which holds that a generalized interest in reputation is neither "liberty" nor "property" for purposes of the Fourteenth Amendment. *Id.* at 712. Meade contends that we should follow Second Circuit law to the effect that damaging information in a public employee's personnel file will almost certainly be released to future employers. See *Valmonte v. Bane*, 18 F.3d 992, 1000 (2d Cir. 1994). That rule is contrary to our circuit's requirement that a plaintiff show publication of the stigmatizing information. See, *e.g.*, *Palka v. Shelton*, 623 F.3d 447, 454-55 (7th Cir. 2010). Thus, even taking into account the fact that complaints need not plead legal theories, see *McDonald v. Household Int'l, Inc.*, 425 F.3d 424, 427–28 (7th Cir. 2005), Meade has failed to allege a deprivation of a protected liberty interest.

**IV**

Although Meade may not pursue a due process claim based on the deprivation of a liberty interest, she has pleaded enough to go forward on the theory that the college deprived her of a protected property interest. She has also stated a claim for retaliation in violation of her First Amendment rights. We therefore REVERSE the district court's decision granting Moraine Valley's motion to dismiss for failure to state a claim and REMAND for further proceedings consistent with this opinion.