IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN MEADE, )<br>)<br>      Plaintiff, )<br>)<br>v. )<br>)<br>MORAINE VALLEY COMMUNITY COLLEGE, )<br>)<br>      Defendant. ) | CASE NO. 13 C 7950<br><br>Judge Samuel Der-Yeghiayan<br>Magistrate Judge Michael Mason |

MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION FOR
SUMMARY JUDGEMENT ON THE ISSUE OF LIABILITY

NOW COMES Plaintiff, ROBIN MEADE, by her attorneys, and files this Memorandum in support of her Motion for Summary Judgement on the Issue of Liability.

**FACTS**

Plaintiff, Robin Meade entered into a written employment agreement with Defendant MORAINE VALLEY as an adjunct faculty member to teach classes at the College for the first semester of the 2013-14 school year, with the further understanding that she would also teach classes at the school during the second semester of that year. She had a written employment agreement for that position. At the time, Plaintiff was the President of Moraine Valley Adjunct Faculty Organization (MVAFO), the collective bargaining representative for Adjunct Faculty employed by Moraine Valley Community College.

Defendant has been a member of The League for Innovation in the Community College. That organization requires a member to re-apply for admission to the League whenever the Presidency of the member college changes. Thus, when Sylvia Jenkins became President of Defendant, a presentation was prepared by Defendant's administration to re-apply for membership in The league. Various entities were requested to write letters in support of Defendant's application to the League. The Adjunct Faculty Union was requested to write such a letter, but declined to do so. Rather, the Union decided to poll its members regarding the manner in which Defendant treated its adjunct faculty members. A survey was distributed to

MVAFO members in January, 2013. The results of that survey were not flattering to Defendant. Based upon the results of the survey, the Executive Board of MVAFO authorized Plaintiff, as its president to write to The League setting forth the union's views on Defendant's fitness to serve on the League's Board. Plaintiff submitted a draft of the letter she proposed to send to the League to members of MVAFO's Executive Board.

After receiving input from MVAFO Board members, in her capacity as President of the MVAFO, on August 20, 2013, Plaintiff wrote a letter which she sent only to the Board Members of The League. That letter set forth the position formulated by the MVAFO membership regarding MORAINE VALLEY's affiliation with The League. That letter was critical of Moraine Valley's treatment of adjunct faculty, stating, *inter alia,*

> adjunct faculty are treated as a "lower class of people" and "disposable resources," although they teach the majority of the classes at the school;
> the college "works hard to divide and conquer between the union chapters" at the school;
> Moraine Valley does not pay adjunct faculty a living wage, nor do they have access to health care;
> the college had recently discontinued discount for access to the health center for adjunct faculty;
> adjunct faculty are no longer able to teach and work on an hourly basis at the College, interfering with their ability to tutor their students.
> These factors were a disadvantage to the students at the school.

On August 22, 2013, two days after she wrote this letter, Plaintiff received a Memorandum from the Executive Vice President of Administrative Services of Defendant, informing her that her employment was "terminated effective immediately." The memorandum specifically stated that this termination resulted from the August 20 letter written by Plaintiff to the League for Innovation in Community College. The notice of termination charged that

Plaintiff's letter "goes far beyond what could be considered responsible advocacy on behalf of the MVAFO. The notice accused Plaintiff of a personal attempt to falsely discredit the College with the League. The notice stated that Plaintiff's conduct was "disruptive and not consistent with the best interests of the college."

Defendant's President, Sylvia Jenkins, had been sent a copy of Plaintiff's letter by other members of The League. She became angry when she read the letter, because she did not like its contents. She called the President of Defendant's Board of Trustees, and read the letter to him over the telephone. He immediately instructed Jenkins to terminate Plaintiff's employment, an action in which Jenkins fully concurred. Jenkins called Andrew Duren to her office, and instructed him to notify Plaintiff that she was to be terminated immediately.

Although Plaintiff's letter itself indicated that the views set forth were those of the members of the Faculty Union, and directed the readers of the letter to the Union's web site where the results of the survey upon which the letter was based were posted, neither Jenkins, Duren or anyone else bothered to view that information, or do anything else to learn the facts as to how and why the letter originated. Their mind was made up. Plaintiff was to be fired immediately; nothing else would do.

Plaintiff's written employment agreement, a property right, was terminated without notice or an opportunity for Plaintiff to respond to the charges made against her. Her termination was a *fait accompli*.

Not satisfied with summarily depriving Plaintiff of her property right to employment at the School, Defendant threatened to bring criminal charges against Plaintiff. On September 9, 2013, she received an email from the Chief of Moraine Valley Police Department which stated:

> This to notify you that your further presence on campus; after your termination will be considered Criminal Trespass. It is the policy of the college to limit your visits to your own labor issues alone. All other issues that you feel you need to address will be directed to Vice President Duren or myself in his absence. Disruption or interference with normal college operations will not be accepted and violations after this notice may result in your arrest by the college police department. Any questions you may have, again may be directed to VP Duren or myself in his absence. Thanks - Chief Pat O'Connor

Subsequently, Defendant changed the locks on the MVAFO offices on the campus. Plaintiff has been rendered virtually unable to fulfill her duties as President of the Adjunct Faculty organization.

The MVAFO filed a grievance over Plaintiff's firing. When Jenkins directed that the grievance be denied, again without any attempt to learn any facts surrounding the preparation and sending of Plaintiff letter, the Union sought an unfair labor practice charge against Defendant before the Illinois Educational Labor Relations Board. After a full hearing, and full briefing by the parties, the IELRB held that Defendant was guilty of an unfair labor practice in dismissing Plaintiff from her employment.

## ARGUMENT

### I. STANDARD FOR SUMMARY JUDGEMENT

Summary judgment is proper when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. *Mote v. Aetna Life Ins. Co.*, 502 F.3d 601, 606 (7th Cir., 2007).

The Court of Appeals has delineated the law to be applied to this case. That decision is the law of the case. *Kathrein v. City of Evanston,* 752 F.3d 680, 685 (7th Cir. 2014). The holding of the Court of Appeals *Meade v. Moraine Valley Community College,* 770 F.3d 680 (7th Cir. 2014), must be applied to the facts as developed since this case was remanded to this Court.

### II. DEFENDANT HAS EGREGIOUSLY VIOLATED PLAINTIFF'S RIGHTS TO FREEDOM OF SPEECH

Forty-five years ago, the Supreme Court considered a situation remarkably similar to this one. A school teacher named Marvin Pickering was fired from his employment by a High School in Will County, Illinois, because he wrote a letter to a newspaper critical of his employer. There, as here, the school found that the letter he had written was "detrimental to the efficient

4

operation and administration of the schools of the district" and hence, the "interests of the school required his dismissal*." Pickering v Board of Education of Twp H.S. Dist 205,* 391 US 563, 567, 88 S Ct 1731,20 L Ed 2d 811 (1968)  The only significant difference between the accusations against Marvin Pickering and Robin Meade is that Pickering was given a full hearing on the allegations against him, while Plaintiff here was given no process at all.   In the forty-seven years since *Pickering* was decided by the Supreme Court, the rights of union officers such as Plaintiff have been reiterated over and over again.  Defendant's officers, Jenkins and Duren, intentionally ignored those rights.  In fact, as the evidence shows, Duren's notification to Plaintiff of the reasons for summarily dismissing her from employment by Defendant were either known by him to be false when he wrote them, or were written in deliberate ignorance of the true facts.

 The Court of Appeals has established, with no room for discussion, that Plaintiff's letter was on a matter of public concern, entitled to full protection by the First Amendment:

> Applying these standards, we have no trouble concluding that Meade's letter discussed several matters of public concern. In fact, the letter contained almost no content personal to Meade.  Although she informed LICC that she had turned down Moraine Valley's request to support its reapplication as an LICC board member, she said nothing about her own experiences or gripes. Rather, she emphasized that she was writing as the head of a union whose members were concerned about the way the college treated them as a group. The letter's multiple references to the difficulties facing all Moraine Valley's adjuncts remove it from the realm of the purely personal. And Meade is not alone in expressing concern about the treatment of adjuncts. Colleges and universities across the country are targets of increasing coverage and criticism regarding their use of adjunct faculty. 770 F.3d at 684.

 It has been established for over ninety years that neither students nor teachers shed their constitutional rights to freedom of speech or expression at the schoolhouse gate. *Tinker v. Des Moines Independent Community School District*, 393 US 503, 506, 89 S Ct  733, 21 L Ed 2d 731 (1969) Indeed, actions such as those in which Plaintiff has engaged are entitled to special protection under the First Amendment.  Our Nation is deeply committed to safeguarding academic freedom, which is of transcendent value to all of us and not merely to the teachers concerned. That freedom is therefore a special concern of the First Amendment, which does not

5

tolerate laws that cast a pall of orthodoxy over the classroom. The vigilant protection of constitutional freedoms is nowhere more vital than in the community of American schools. The classroom is peculiarly the "marketplace of ideas. The Nation's future depends upon leaders trained through wide exposure to that robust exchange of ideas which discovers truth "out of a multitude of tongues, [rather] than through any kind of authoritative selection. (Citations omitted) *Keyishian v. Board of Regents of the University of the State of New York,* 385 U.S. 589, 603, 87 S. Ct. 675, 17 L. Ed. 2d 629 (1967)

Not only did this defendant penalize Robin Meade for her speech by terminating her employment, it intentionally interfered with her ability to continue to function as President of the Adjunct Faculty Union by threatening to arrest her if she so much as appears on Moraine Valley's campus. She was forbidden from doing what virtually any other citizen may freely do. Such actions have been condemned by the Courts repeatedly. There is no justification for such draconian retaliation.

The Board's directive banning Plaintiff from setting foot on the campus prevented her from appearing at meetings of the Moraine Valley Community College Board meetings. Such conduct was denounced by the Supreme Court in *City of Madison Sch. Dist. No. 8 v. Wisconsin Employment Relations Commission*., 429 US 167, 97 S. Ct. 421, 50 L. Ed. 2d 376 (1976). The Supreme Court made it clear there that it is a violation of First Amendment rights to forbid anyone from appearing before a school board meeting which is open to the public. Plaintiff has a right both to attend such meetings, both as an individual, and as a representative of the collective bargaining representative of which she is President. 429 U.S. at 176. She has a right to attend such meetings, and be heard.

But, that is only one reason that Defendant's action is unconstitutional.

The order banning Plaintiff from appearing on campus is clearly aimed at preventing her from speaking and being heard. Singling out a specific speaker for treatment different than other citizens has also been long proscribed as violative of the First Amendment. The public in

general is entitled to come onto the campus of Moraine Valley Community College. While the administration may adopt reasonable time, place and manner restrictions regarding the campus, any restrictions to access to that place must be content neutral, narrowly tailored to serve an significant governmental interest, and leave open ample alternate channels of communication. *Perry Education Assn v Perry Local Educators' Assn,* 460 US 37, 45, 103 S Ct 948, 74 L Ed 2d 794 (1983) Moraine Valley cannot prohibit Plaintiff from access to its campus in an effort to suppress expression because some one within Moraine Valley's hierarchy opposes her views. *Id.* at 46.

     Laws designed or intended to suppress or restrict the expression of specific speakers contradict basic First Amendment principles. Government may not penalize an individual because it does not agree with the content of her speech. Even assuming Moraine Valley could articulate a reason why it disagrees with Plaintiff's speech, banning her from access to its campus is clearly not the least restrictive means available to combat any such reason. *United States v. Playboy Entertainment Group, Inc.*, 529 US 803, 812,827, 120 S. Ct. 1878, 146 L. Ed. 2d 86. (2000) The Courts have repeatedly condemned discrimination between different users of public property. The government may not grant the use of a forum to people whose views it finds acceptable, but deny use to those wishing to express less favored or more controversial views. Moraine Valley may not select which issues are worth discussing or debating in its facilities. There is an "equality of status in the field of ideas, and government must afford all points of view an equal opportunity to be heard. Selective exclusions from a public forum may not be based on content alone, and may not be justified by reference to content alone*. Police Department of City of Chicago v Mosley*, 408 US 92, 96, 92 S Ct 2286,33 L Ed 2d 212 (1972) Yet, that is exactly what Defendant has done to Plaintiff.

     Moraine Valley barred Plaintiff from coming onto its campus solely because it disagreed with the content of her speech. Such action is in flagrant violation of Plaintiff's constitutional rights. Moraine Valley bears the burden of justifying its action. It clearly cannot do so because

it disagrees with her comments on matters of public concern which do not relate to her own status in the workplace. *United States v. National Treasury Employees Union,* 513 US 454, 466, 115 S. Ct. 1003, 130 L. Ed. 2d 964 (1995).

Both Jenkins and Duren admitted that their claims that Plaintiff's letter was disruptive of the College's operations, or even the operation of The League itself, were false. Duren had no basis for making that statement. The Court of Appeals pointed out quite cogently, that Duren's accusation that the letter was some personal attack by Plaintiff is belied by the statements of the letter itself. Duren's accusations that Plaintiff's letter was "replete with misrepresentations and falsehoods," is also belied by the contents of the letter itself. Indeed, the letter contains nothing but opinions - opinions of members of the Adjunct Faculty union, who set them forth in the survey conducted by the Union. Plaintiff's letter was nothing but a responsible representation of the feelings, beliefs and opinions of the members of the union of which she was President.

Defendant cannot justify its actions, which were contrary to nearly fifty years or settled law, and were motivated by the personal pique of Jenkins and Duren, who could not stand to have anyone criticize the manner in which they were operating Defendant.

### III. DEFENDANT BREACHED PLAINTIFF'S TEACHING CONTRACT AND DEPRIVED HER OF DUE PROCESS WHEN IT SUMMARILY DISMISSED HER

Again, we do not write on a clean slate. The Court of Appeals has determined that Plaintiff had an enforceable contract to teach at Defendant for the 2013-14 school year. The only issue regarding that contract is how much Plaintiff has lost as a result of Defendant's precipitate demolition of that agreement.

> We long ago observed that "[a] term of employment set by contract has been recognized as a property interest which the state cannot extinguish without conforming to the dictates of procedural due process."
>
>          *            *            *
>
> The course schedule on Meade's employment agreement provided specific starting and ending dates for her teaching responsibilities and told her what she would be paid for doing so. This was sufficient to provide Meade with an expectation of employment at Moraine Valley during the specified time, and thus a cognizable property interest in working at the college during that period. 770 F.3d at 687

Little need be said to demonstrate that Defendant breached Plaintiff's Employment Agreement and violated her rights of due process in doing so. Both Duren and Jenkins have admitted they terminated Plaintiff precipitously, without any semblance of notice or a hearing. Indeed, they admitted that they deliberately failed to look at information which was available to them which would have demonstrated Plaintiff's actions were on behalf of her union, in furtherance of the views of the members of that union. Defendant has no justification for these actions.

After a full hearing, the IELRB has found that Defendant violated Plaintiff's rights under the Illinois Educational Labor Relations Act. Defendant had an opportunity to demonstrate in that proceeding that Plaintiff's statements in her letter to The League were untrue. It failed miserably in its attempts to do so. As the IELRB found:

> Specifically, Meade's letter addressed the effect of the College's conduct on adjunct faculty members' working conditions. Therefore, her statements in the letter were subject to an extremely high degree of protection under the Act. An employer seeking to prove that a union officer's statement about matters within the scope of the union's representation of employees are not protected faces a very heavy burden. It was the College's burden to show that Meade's statements than (sic) were deliberately or maliciously false, rather than the Union's burden to demonstrate that they were not. While the College may disagree with Meade's statements in her August 20 letter, it has offered no evidence that her statements were deliberately or maliciously false, or even reckless with regard to their truth or falsity. . . . the Union's communications toward the League, a third party, clearly indicated the existence of a labor dispute with the college regarding the College allegedly cutting adjunct faculty members' hours, and the critical statements were not maliciously untrue. In the absence of evidence that Meade's statements were deliberately or maliciously false, they did not lose the protection of the Act.  (Exhibit 8, pp 9-10.)

The holding by the IELRB is entitled to collateral estoppel status in this case. It meets the criteria recognized in this Circuit, in that: "1) the original action was properly before the agency, (2) the same disputed issues of fact are before the court as were before the agency, (3) the agency acted in a judicial capacity, and (4) the parties had an adequate opportunity to litigate the issue before the agency." *Meyer v. Rigdon*, 36 F.3d 1375, 1379 (7th Cir 1994). To allow Defendant to attempt to take some other position regarding the reasons it breached Plaintiff's employment contract in this proceeding would be improper.

9

There is no question but that Plaintiff's contract was breached by Defendant, and that it violated Plaintiff's rights to due process in doing so. Plaintiff is entitled to Judgment declaring that Defendant breached her employment contract and violated her rights to due process by not providing her with any semblance of a hearing prior to doing so.

## CONCLUSION

There is no legitimate justification for Defendant's actions against Plaintiff. It is guilty of breaching her employment contract, depriving her of due process in taking that property right from her, and in retaliating against her for exercising her rights to freedom of speech. Judgment on the issue of liability must be entered in favor of Plaintiff, against Defendant.

S/Wayne B. Giampietro

Plaintiff's attorney

Of counsel:
Poltrock & Giampietro
123 W. Madison St., Suite 1300
Chicago, Illinois  60602
312 236 0606; Fax 312 236 6492
wgiampietro@wpglawyers.com
ARDC # 0947776