**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF  ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| ROBIN MEADE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO.  13 C 7950 |
| | ) | |
| MORAINE VALLEY COMMUNITY COLLEGE, | ) | Judge Samuel Der-Yeghiayan |
| | ) | Magistrate Judge Michael Mason |
| Defendant. | ) | |

**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR**
**SUMMARY JUDGEMENT ON THE ISSUE OF LIABILITY**

NOW COMES Plaintiff, ROBIN MEADE, by her attorneys, and files this Reply in support of her Motion for Summary Judgment on the issue of Liability herein.

## I. INTRODUCTION:

Defendant continues to misrepresent the record in this case.  We respond to the issues raised in the "Introduction" in Defendant's Memorandum here.

Defendant claims there is no support in the record for the assertion that the results of the survey conducted by MVAFO of its members was "not flattering" to Defendant, and further asserts that the survey bears no resemblance to the letter written by Plaintiff to the League. That statement is false.  The results of the survey (Defendant's Exhibit 13, not Exhibit 21, as Defendant mistakenly states) contains the following information:

1. Do you find Moraine Valley Community College Innovative toward adjuncts?
      No 48%      Yes 41.6%
(Defendant's Exhibit 13, p. 2)
9.  Are you likely to take advantage of the services in the [Center for Teaching and Learning} this semester?
      No 67%      Yes 33%
        *     *     *
10.  What one innovative idea for adjuncts would you like to see implemented at MVCC?  .      Collaboration      22%

| | |
|---|---|
| Pay | 16.3% |
| Professional Development | 13.8% |
| Respect | 12.2% |
| Facilities | 8.9% |
| Other | 1.6% |
| None | 8.9% |

(Defendant's Exhibit 13, p. 3).

11. Please pick three ideas for adjunct innovation you would favor from the list provided Clear path to becoming a full time instructor 61.5%

| | |
|---|---|
| Class assignment by seniority | 45.1% |
| Participation in decision making for your department | 32.8% |
| Participation in choosing texts. | 29.5% |
| Voice in scheduling | 28.7% |
| Stipend for participation in decision making | 23% |
| Having a Dean for the adjuncts | 21/3% |
| Attending department meetings | 20.5% |
| Participation in decision making for the college | 16.4% |
| Wellness points tied to participation | 13.1% |

(Defendant's Exhibit 13, p. 4)

\*            \*            \*

Do you find Moraine Valley Community College innovative toward adjuncts?

| Answer Options | Response Percent | Response Count |
|---|---|---|
| Yes | 41.6% | 57 |
| No. | 58.4% | 80 |

(Defendant's Exhibit 13, p. 5)

The survey further contains specific comments setting forth the Adjuncts' dissatisfaction with the way they are treated at Moraine, very few of which are positive. (Defendants' Exhibit 13, pp. 30-35). It is uncontroverted that the Executive Board of the MVAFO approved the writing the letter, based on the survey. (Meade Dep., pp. 81-82; Plaintiff's Exhibit 5)

Defendant's contention that somehow Plaintiff was given an opportunity for a pre-termination hearing is a blatant falsehood. The decision to terminate Plaintiff had been made immediately upon Jenkins' reading of the letter. (Jenkins Dep., pp. 35-36). Duren's claim to have offered Plaintiff a pre-termination hearing was a chimera, as he had no intention of giving Plaintiff a hearing. He was going to terminate her regardless of anything she might say. (Duren Dep., pp. 64-65)

The remainder of Defendant's so-called corrections of the facts are irrelevant, and require no further response.

2

## II. THE DECISION OF THE COURT OF APPEALS IS THE LAW OF THE CASE

Defendant's argument that the decision of the Court of Appeals is not the law of the case, and that this Court may find Plaintiff's speech not to be protected by the First Amendment is so wrong-headed and without basis as to be violative of Rule 11, Federal Rules of Civil Procedure.

The Court of Appeals could not have been more specific in its finding that Plaintiff's speech was protected by the First Amendment.:

> Applying these standards, we have no trouble concluding that Meade's letter discussed several matters of public concern. In fact, the letter contained almost no content personal to Meade. Although she informed LICC that she had turned down Moraine Valley's request to support its reapplication as an LICC board member, she said nothing about her own experiences or gripes. Rather, she emphasized that she was writing as the head of a union whose members were concerned about the way the college treated them as a group. The letter's multiple references to the difficulties facing all Moraine Valley's adjuncts remove it from the realm of the purely personal. And Meade is not alone in expressing concern about the treatment of adjuncts. Colleges and universities across the country are targets of increasing coverage and criticism regarding their use of adjunct faculty. 770 F.3d at 684.

Plaintiff's letter was on a matter of public concern regarding the plight of adjunct faculty at Moraine Valley, and other similar community colleges. Defendant quibbles whether Plaintiff's letter specifically tracked the results of the survey of MVAFO members. It simply makes no difference whether it did or not. The statement in Plaintiff's letter were her opinions, based upon her experience as an employee of Moraine Valley and as president of the MVAFO. She had a constitutional right to express those opinions.

Nothing in the discovery in this case since the decision of the Court of Appeals has changed anything regarding the Court's view of the matter. As the Court pointed out in both its decision in this case, and in *Kristofek v. Village of Orland Hills,* 712 F.3d 979, 984 (7th Cir. 2013), "whether a statement rises to the level of public concern is a question of law, and in answering this question we look to the content, form and context of the statement." The Court of Appeals has established in this case *AS A MATTER OF LAW* that Plaintiff's letter is on a matter of public concern. No amount of ranting or pettifogging by Defendant or its counsel will change

that. Plaintiff's letter is protected by the First Amendment. That is a fact about which there can be no dispute.

The only issues remaining to be decided by this Court were specifically defined by the Court:

> The content of Meade's letter places it squarely among matters that are of public concern. The district court thus erred in concluding that her speech was not constitutionally protected. Because it resolved the case at that point, the court did not address the other two issues her case raises: whether the speech was a substantial or motivating factor in the retaliatory action, and whether the defendant can show that it would have taken the same action without the existence of the protected speech. See Chaklos, 560 F.3d at 711. We think it best for the district court to have the first look at those issues on remand 770 F.3d 686

There is no doubt regarding those two issues. Both Jenkins and Duren admitted that the only reason for discharging Plaintiff from her employment was the letter. There is no hint that any action would have been taken against her had she not written that letter. Furthermore, Duren himself, the one who summarily fired Plaintiff, admitted that Plaintiff's letter contained matters of opinion, and that it contained no false statements of fact. (Duren Dep., p. 61).

That ends the matter. Plaintiff wrote a letter protected by the First Amendment. She was fired because of it. Defendant has egregiously violated. her constitutional rights.

Defendant's reference to *Kristofek v. Village of Orland Hills*, 63 F. Supp. 3d 853 (N.D. Ill. 2014) helps it not one whit. This case is not like the situation in *Kristofek*. Plaintiff did not speak out to protect herself, as this Court found that Kristofek had done. There is no pretense that Plaintiff's letter did nothing to interfere with the operation of Moraine Valley Community College, which both Jenkins and Duren have admitted. Unlike what this Court found in *Kristofek*, Defendant has no interests to be weighed against Plaintiff's right to speak out on her perception of the manner in which adjunct faculty are treated at Moraine Valley. Not only is this Court's decision in *Kristofek* not applicable to this case, but perhaps more importantly, that decision is not final, as it is currently on appeal to the Court of Appeals. (United States Court of Appeals for the Seventh Circuit, Docket No. 14-2919). Until the Court of Appeals has spoken in

4

*Kristofek,* the District Court decision in that case is authority for nothing in this case.

### III. BARRING PLAINTIFF FROM MORAINE VALLEY'S CAMPUS IS ANOTHER INDICIA OF DEFENDANT'S BAD FAITH TOWARD HER

Defendant argues that barring Plaintiff from entry onto Moraine Valley's campus after she was discharged is not a content-based restriction of her rights violative of the First Amendment. First, of course, Defendant has cited nothing giving it the right to prohibit Plaintiff to appear on the campus of a public school, to which everyone else is allowed access. The only reason given for this action was Duren's statement that he did not want her "hanging around the union organization." (Duren Dep., p. 77)

That this violates Plaintiffs right of freedom of association with the organization to which she was president is too obvious to require much authority. Plaintiff clearly had the right to associate with other members of the MVAFO to advance their mutual interests. Those rights are protected by the First and Fourteenth Amendment. *Bates v City of Little Rock,* 361 US 516, 80 S Ct 412, 4 L Ed 2d 480 (1960); *NAACP V Button,* 371 US 415, 83 S Ct 328, 9 L Ed d 405 (1963) *Coates v City of Cincinnati,* 402 US 611, 091 S Ct 1686, 29 L Ed 2d 214 (1971).

Defendant's argument that Plaintiff was able to conduct her duties as President of the MVAFO regardless of having been banned from campus is so ludicrous on its face as to require no response. Plaintiff could not meet with her co-union members at the union's own office. That she found a way to continue to carry out her duties does not indicate that she was not injured by Defendant's actions. "Implicit in the First Amendment freedoms of speech, assembly, and petition is the freedom to gather together to express ideas — the freedom to associate." . One of the ways in which the right to associate with others is harmed is governmental interference with the internal organization or affairs of a group. *Christian Legal Society v Walker,* 453 F 3d 853, 861 (7th Cir 2006). It is difficult to imagine a more egregious interference with an association's rights than barring a labor union's president from appearing at the union's offices. Plaintiff has clearly demonstrated a violation of her rights of freedom of

5

association protected by the First Amendment.

## IV. DEFENDANT DEPRIVED PLAINTIFF OF HER PROPERTY RIGHTS WITHOUT DUE PROCESS

Defendant's attempt to alter the clear terms of the Employment Agreement between it and Plaintiff by having one of its employees file a self-serving affidavit claiming that the agreement does not mean what it says is beyond frivolous. The document (Plaintiff's Exhibit 1) clearly states, on its face: "Employment Agreement." Its terms state:

> Duly established and published Board policy is expressly made a part of this agreement by reference and shall be binding by both parties. This is not a full-time employment contract, and the employee shall not be entitled to so-called fringe benefits provided by Board policy except those provided by law. Should the need for indicated service not materialize, this agreement becomes null and void. . . .
> Note: This Agreement must be signed and all employment forms must be on file with the Human Resources Office before payment can begin.

It has long been the law in Illinois that a contract clear and complete on its face may not be altered by parol evidence. *Hunter v. Bilyeu,* 30 Ill. 228 (1863). That precept of contract law has not changed. "If the parties to an instrument intent [sic] that it alone is to constitute the agreement between them or if the instrument itself is complete and discloses no intention that extrinsic matters are a part of it, terms not included in the instrument may not be proved; and if its language is unequivocal, no evidence to show any other meaning or intention may be considered.*" Weiland Tool & Mfg. Co. v. Whitney*, 44 Ill.2d 105, 251 N.E.2d 242, 247 (1969).

Defendant asserts, without basis, that the collective bargaining agreement controls the terms of the contract. But, that cannot be true, as the contract itself specifically incorporates Board Policies into the contract, but says nothing about the collective bargaining agreement. Thus, there is no relationship between the individual contract Defendant chose to tender to Plaintiff and the collective bargaining agreement. A collective bargaining agreement does not prohibit an employer from entering into an individual contract with an employee which supplements a collective bargaining agreement. In *Caterpillar Inc v. Williams*, 482 U.S. 386, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987), the Supreme Court specifically held that an employee

6

covered by a collective bargaining agreement may also have state law contractual rights independent of the collective bargaining agreement. 482 U.S. at 396.

The contract with Plaintiff was drafted by Defendant, and imposed upon Plaintiff. If there is any ambiguity in its terms, that ambiguity must be construed against Defendant. *Bishop v. Lakeland Animal Hosp., P.C.*, 268 Ill.App.3d 114, 644 N.E.2d 33, 36 205 Ill.Dec. 817 (Ill.App. 2 Dist., 1994). Defendant cannot alter the clear written statements within the document it required Plaintiff to sign, stating that it was an "Employment Agreement" and requiring her to sign it in order to receive her salary. This document clearly created a property right in Plaintiff's employment at least for the Fall semester of the 2013-14 school year.

The Court of Appeals recognized this in its opinion. It specifically directed that Defendant provide some admissible evidence to show that the contract Defendant required Plaintiff to sign did not give her a property right. Defendant has completely failed to make such a showing. Plaintiff had a contractual property right which Defendant took from her. As we have demonstrated above, there was a clear violation of Plaintiff's due process rights, as both Jenkins and Duren admitted that they had pre-judged the issue, concluding that Plaintiff must be dismissed without allowing her to be heard, or even availing themselves of the information which was available to them. Nor can Defendant rely upon the hearing before the IELRB as providing the due process to which Plaintiff was entitled, as that hearing considered only the claim that Plaintiff was retaliated against for exercising her rights as a union member. No issue regarding Plaintiff's contractual rights was considered.

Defendant's actions were an egregious violation of Plaintiff's rights to due process of law.

7

## V.  CONCLUSION

Plaintiff has supported all of the claims in her complaint with competent evidence, much of it admissions of wrong doing by Defendant's highest ranking officials.  They decided to fire Plaintiff upon reading her letter.  They were impelled by their own pique at an employee who dared to expose their shortcomings as administrators.  Their minds were made up.  By their own testimony, this action was sanctioned by at least one member of Defendant's Board of Trustees.

They went further than merely firing Plaintiff, by barring her from access to the office of the Union of which she was President, by threatening her with arrest if she so much as set foot on the school's campus.  Again, by Duren's own admission, this was to keep Plaintiff away from the other members of the union of which she was president.

Plaintiff had an employment agreement for the first semester of the 2013-14 school year, which constituted a property right.  That was taken from her without any pretense of due process.

Plaintiff is entitled to judgment as a matter of law that she has proven Defendant liable for all of the matters alleged in her Complaint.  She is entitled to a judgment that Defendant is liable to her on those claims.  Judgment must be entered establishing that liability and setting this case for a trial before a jury on the issues of damages to which she entitled for those violations.

S/Wayne B. Giampietro
Attorney for Plaintiff'

Of counsel:
Poltrock & Giampietro
123 W. Madison St., Suite 1300
Chicago, Illinois  60602
312 236 0606; Fax 312 236 6492
wgiampietro@wpglawyers.com
ARDC # 0947776

8