IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| ROBIN MEADE, | ) | |
| | ) | |
| Plaintiff, | ) | No. 13 C 7950 |
| | ) | |
| vs. | ) | Judge Samuel Der-Yeghiayan |
| | ) | |
| MORAINE VALLEY COMMUNITY | ) | Magistrate Judge Michael Mason |
| COLLEGE, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT'S REPLY MEMORANDUM IN SUPPORT
OF ITS MOTION FOR SUMMARY JUDGMENT**

**I.    INTRODUCTION – PLAINTIFF'S RULE 56.1(b)(3) (B) RESPONSE
REPEATEDLY FAILS TO COMPLY WITH THE RULE; DEFENDANT'S
STATEMENT OF UNDISPUTED  FACTS SHOULD BE DEEMED ADMITTED.**

L.R. 56.1(b)(3)(B) requires a party who opposes a motion for summary judgment to file "a

response to each numbered paragraph in the moving party's statement, including in the case of any

disagreement, specific references to the affidavits, parts of record, and other supporting materials

relied upon." As recently set forth by the Court of Appeals in *Perez v. Board of Education of the*

*City of Chicago*, 576 Fed.Appx. 615 (7th Cir. 2014):

> The local rule requires that a litigant respond by agreeing or
> disagreeing with each fact proposed in the moving party's
> Statement, and in the case of disagreement, by citing evidence in
> support of the denial. Also, although a non-movant may submit a
> separate Statement of Additional Facts, responses to the movant's
> proposed facts may not include assertions of unrelated facts or legal
> arguments.

A "District Court does not abuse its discretion when it penalizes a litigant for disregard of

the Local Rule." *Sichon v. Exelon Generation*, 401 F.3d 803, 809-10 (7th Cir. 2005). Under

56.1(b)(3)(C) the failure of a party to properly controvert a statement results in that statement being

deemed admitted. See also this Court's instructive Opinion in *Wynn v. Kaupas*, ___ F.Supp.2nd
___ 2007 WL 433537 (N.D. Ill. 2007) at * 3.

Plaintiff's Response (Doc. #58) is replete with violations of the Rule. As a general matter,
we presume that for those statements where Plaintiff responds "no objection," she is indicating an
agreement with those facts. Plaintiff has objected to the majority of the 72 defense Statements of
Fact (Which we refer to as "DSOF ___"). Many of the objections are pure evasions, like objections
based on relevance. It is Court's perview to determine whether the facts cited by a movant are
material (or in Plaintiff's words, "relevant"). The purpose of the Rule 56.1 Statement "is to
identify the relevant admissible evidence supporting the material facts, not to make factual or legal
arguments." *Sonix Technology Co., Ltd. v. Publications International, etc.*, ___ F.Supp.3d ___
2015 WL 8153600 (N.D. Ill. 2015).

Here are just a few of the violations. DSOF 4-10 set forth matters of fact set forth in the
affidavit of College H.R. Director Harrington. Plaintiff objects to ¶ 4 by saying "this information
is not accurate," without pointing to any record citation, affidavit, or other admissible evidence
which would contradict the Affidavit. Plaintiff then objects to ¶¶ 9 and 10 with a legal argument
(an argument which is not accurate) that the Court of Appeals opinion on the motion to dismiss
definitively decided the issue of the relationship between Plaintiff's individual "Agreement" and
the collective bargaining agreement.

Paragraph 21 objects, *inter alia*, to the accuracy of the analysis of the Union survey, but
fails to point to anything in the record to support that objection. DSOF 35 provides a verbatim
quotation setting forth Plaintiff's admission that far from being a matter of public concern, the
Letter was simply intended to summarize "the gripes of [her] members relative to their work

conditions." Plaintiff claims that this citation is argumentative and inaccurate, but fails to advise the Court as to why verbatim admissions are argumentative or inaccurate. See also ¶ 35.

Plaintiff next objects to the testimony relating to College President Jenkins' rationale for why she determined that she concluded that the communication was false. This testimony is material to the issue of recklessness, which this Court extensively discussed in *Kristofek v. Village of Orland Hills*, 63 F.Supp.3d 853, 861-2 (N.D. Ill. 2014).

Plaintiff objects to ¶ 44, which sets forth the facts relating to Vice President Duren's attempt to have a face-to-face *Loudermill* meeting with Plaintiff. Plaintiff's objections are that Duren "made no real effort" to meet with Plaintiff; once again an assertion with no record citation.

Plaintiff next objects to the series of admissions made by Plaintiff in her sworn testimony before the IELRB (DSOF 54-68). Plaintiff fails to point out where the summary is inaccurate, or why these admissions are not material as to the issue of recklessness. Plaintiff then objects to DSOF 50, which sets forth Plaintiff's interrogatory admissions, which go to the issue of whether the Letter was really addressing matters of public concern, or was really focused on such intramural trivialities as parking passes and faculty picnic schedules. Once again, Plaintiff's objections are evasive and should be disregarded by this Court.

The robotic nature of Plaintiff's responses is capsulized in her response to DSOF 70, which is a summary of an Affidavit by College Vice President Haney going to the issue of falsehood. Plaintiff's objection is that this reference to an affidavit by a College vice president "is an argumentative, inaccurate summary of a portion of Plaintiff's testimony." [Emphasis added]. The response to DSOF 72 repeats the same erroneous "Plaintiff's testimony" statement.

The requirements for responses under L.R. 56.1 are "not satisfied by evasive denials that do not fairly meet the substance of the material facts asserted." *Bordelon v. Chicago School*

3

*Reform Board*, 233 F.3d 524, 528 (7th Cir. 2000). Because this Court is entitled to expect strict compliance with the Rule, *Raymond v. Ameritech Corporation*, 442 F.3d 600, 604 (7th Cir. 2006), naked denials and objections such as those of Plaintiff result in the facts being admitted. *Thele v. Sunrise Chevrolet, Inc.*, ___ F.Supp.2d ___ 2004 WL 1194751 (N.D. Ill. 2004) at * 3 ("Where properly supported factual assertion is met with such a naked denial, the fact may be deemed admitted").

Accordingly, Defendant respectfully submits that all of the facts set forth in DSOF be deemed admitted. Materiality is a question for this Court to determine based on those undisputed facts.

## II.   THE UNDISPUTED FACTS ENTITLE DEFENDANT TO SUMMARY JUDGMENT ON THE DUE PROCESS ISSUE

### A.   No Property Interest.

With that background, we first reply to Plaintiff's argument on the due process issue (Doc. #52, pgs. 8-9). Plaintiff argues (at 8) that the defense assertion regarding adjunct faculty members being subject to bumping "is pure speculation with no evidentiary support whatsoever." This assertion is not correct. Our Doc. #45-18 (Def. Ex. 26) is the affidavit of H.R. Director Harrington. These are undisputed facts for purposes of summary judgment. As set forth in ¶ 6 of the affidavit, the document upon which Plaintiff predicates her property interest claim is not any sort of a binding, contractual guarantee of work for adjuncts. Paragraph 6(b) sets forth the fact that frequently adjuncts are bumped by full-timers, who have a priority entitlement to teaching assignments.

The Harrington affidavit further explains that the "agreement" form is nothing other than an assignment sheet which does not guarantee "adjunct faculty members either the specified number of classes or any classes at all during the designated semester." Ex. 28 at ¶ 6. The

Harrington affidavit also gives context to Section 3.1(G) of the adjunct faculty contract, which provides that adjunct faculty members are employees at will.  Doc. #45-1.

The Harrington affidavit is uncontroverted evidence.  It provides the context which the Court of Appeals said was absent from the allegations of the complaint itself.  770 F.3d at 688 ("The relation being the [collective bargaining agreement] and Meade's own employment agreement is not clear from the pleadings, so we cannot conclude at this stage that the CBA blocks Meade's claim"), and it fills in the gap the Court of Appeals found as to whether  the CBA dis, in fact,  "automatically make her an at-will employee." *Id.*

The affidavit of long-term College employee Harrington sets forth facts, and not the "pure speculation" of defense counsel.  The Court now has the historical and operational context as to the nature of the "agreement" itself as well as the relation between the agreement and the collective bargaining agreement.  The CBA announces that Plaintiff is an employee at-will; the Harrington Affidavit establishes that the agreement does not give an adjunct faculty member an entitlement to teach the assigned number of classes for any academic term.  As such, the agreement does not create a property interest, even for the one semester.  *Mid-Am Waste System, Inc. v. City of Gary*, 49 F.3d 286, 290 (7th Cir. 1995) ("If a contract creates rights specific enough to be enforced in state court by awards of damages or a specific performance, then it creates a legitimate claim of entitlement; and if it creates such a claim, it is 'property'").  The Harrington affidavit makes it clear that an adjunct has no guarantee to teach the classes during the semester of the assignment.  The Harrington affidavit also clarifies that the agreement and CBA are to be read *in pari materia*. Def. Ex. 26 at ¶ 7.

Plaintiff's due process argument (at 8-9) is premised on two erroneous contentions.  The Court of Appeals opinion is not the law of the case, and the defense assertions regarding the nature

5

of the agreement, agreement form, and its relationship to the CBA are supported by competent admissible evidence in the form of the Harrington affidavit. Based on the foregoing, Defendant is entitled to summary judgment on the due process claim because the agreement form does not create a property interest in continued employment.

**B.    The Process Issue.**

Should the Court decide to examine the process issue, Plaintiff's non-response to DSOF has simplified this Court's task.

First, Plaintiff has admitted DSOF 48-51 which establishes that Plaintiff received prompt post-deprivation due process by way of the grievance procedures provided in the collective bargaining agreement. The parties are in agreement that Plaintiff "was given an opportunity to tell her side of the story" at the grievance meeting, where she was accompanied by a Union representative. DSOF 49-50.

As to the pre-termination *Loudermill* opportunity to be heard, we invite this Court's attention to DSOF 45 and Plaintiff's Response. It is undisputed that Vice President Duren attempted to contact Meade for a face-to-face *Loudermill* meeting, but was informed that Meade was unable to meet at the time requested or any time soon. DSOF 44-45. Plaintiff does not dispute these allegations, but only objects by arguing that Duren "made no real effort to have a meeting with Plaintiff." This statement is unsupported by the record. Accordingly, the Court should accept the facts as set forth in the Duren deposition (47-48) as uncontested.

In this case, the undisputed facts show that Plaintiff waived her right to a *Loudermill* hearing because "when an employer offers a pre-termination hearing and the employee fails to accept, the *Loudermill* right to such hearing is waived." *Ryan v. Illinois Department of Children and Family Services*, 185 F.3d 751, 761 (7th Cir. 1999). Here are the undisputed facts relating to

the process issue: (i) She was given an opportunity for pre-termination process which she either could not or would not avail herself; (ii) she received immediate post-termination process; and (iii) she further availed herself of post-termination state law remedies by way of the IELRB proceeding. "Considering the entire process available to [Plaintiff]," the Court should find that there was no denial of due process. *Shepherd v. City of East Peoria*, ___ F.Supp.3d ___ 2015 WL 2455084 (C.D. Ill. 2015) at * 11; *Yahnke v. County of Kane*, 2015 WL 1980248 (N.D. Ill. 2015) at * 5 ("When determining what process is due in the context of unauthorized deprivations of a protected property right, if there is an adequate post-deprivation state law remedy available, this remedy is all the process a plaintiff is due").

Accordingly, to the extent this Court finds a property interest in a one -semester teaching assignment based on the agreement, the Defendant is nevertheless entitled to summary judgment because viewed in the entirety, Plaintiff received adequate due process.

Finally, Plaintiff's only argument that the state law proceedings before the IELRB do not satisfy due process as to an adequate post-deprivation remedy is because "Plaintiff is entitled to a jury's consideration of punitive damages against Defendant" in this proceeding. Plaintiff's Memo at 11. This argument is misplaced. Local governments are not subject to punitive damage awards in §1983 actions or in state court litigation. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981); *Hall v. Village of Flossmoor Police Department*, 2012 WL 379902 (N.D. Ill. 2012) at * 4 (A local government "is immune from punitive damages unless immunity has been waived and Illinois has not waived immunity for its local governments"); 745 ILCS 10/2-102. Therefore, since Plaintiff would not be entitled to punitive damages against the College either in a § 1983 action or in a proceeding under Illinois law, the remedy which Plaintiff is pursuing under state law satisfies procedural due process.

## III.  DEFENDANT IS ENTITLED TO SUMMARY JUDGMENT ON THE FIRST AMENDMENT CLAIM

### A.  The Public Concern Issue

To some extent, Plaintiff's argument on this point (Doc. #52 at 3-4) is a repetition of the argument made by Plaintiff in her cross-motion.  On the "matter of public concern" issue, Plaintiff ignores the difference between a decision on a motion to dismiss, where only the complaint is considered, and a decision at summary judgment, where the pleadings fall by the wayside and the evidence is what counts.  Perhaps in tacit recognition of this difference, Plaintiff completely ignores the law and procedural path of the closely analogous  *Kristofek v. Village of Orland Hills*, 2012 WL 1623214 (N.D. Ill. 2012), 712 F.3d 979 (7th Cir. 2013), and 63 F.Supp.3d 853 (N.D. Ill. 2014).  *Kristofek* provides the analytical roadmap for this case.

In *Kristofek*, the Seventh Circuit reiterated the *Connick* rule that if the objective of the speech "as determined by content, form and context" is designed to further personalized grievances, the speech does not involve matters of public concern.  712 F.3d at 986.  On the other hand, if the objective of the speech was "also to bring about change with public ramifications extending beyond the personal, then the speech does involve a matter of public concern."  *Id.*  The Court further emphasized that speaker motive is not dispositive.  *Id* at 985.

We now have a full record.  As in *Kristofek*, the Seventh Circuit was presented only the content of the speech at the motion to dismiss stage.  As in *Kristofek*, a record has been made as to "all three factors of content, form and context."  *Id* at 985.  As in *Kristofek*, the ruling of the Seventh Circuit on the First Amendment public concern inquiry is not the law of the case, given the fact-sensitive, multi-part nature of the *Connick* inquiry.

The undisputed facts show that the context of the letter was a running dispute between the College and Plaintiff's Union over strictly internal personnel matters, with no ramifications outside

the institution, which are not matters of public concern. DSOF 20-34; *Bunger v. University of Oklahoma*, 95 F.3d 987, 992 (10th Cir. 1996) (Matters are not a public concern when they are "internal in scope and personal in nature"). Plaintiff repeatedly conceded in her deposition that the point of the speech was to convey "the gripes of [Plaintiff's] members relative to their work conditions." DSOF 27, 35.

In our opening memorandum, we pointed out the Tenth Circuit's decision in *Brammer-Hoetler v. Twin Peaks Charter Academy*, 492 F.3d 1192, 1206 where the Court found that almost identical grievances filed by a group of teachers did not relate to matters of public concern. Doc. #42 at 8. Recently, in *Alves v. Board of Regents of the University System of Georgia*, 804 F.3d 1149 (11th Cir. 2015), the 11th Circuit likewise concluded that speech similar to Plaintiff's did not rise to the level of public concern speech because the record as a whole demonstrated that the form and context of the group grievances all related to concerns regarding internal administration of the institution, privately expressed, which did not constitute citizen speech. As in *Alves*, the point of the speech in Plaintiff's letter to the college presidents was not to bring wrongdoing to light, but rather to complain about internal issues of educational administration such as wages, insurance, class assignment priority, and parking privileges.

Viewed in the context of the developed record, the matters set forth in the Letter are workplace grievances which do not rise to the level of public concern speech. The Court's initial conclusion – now buttressed by a full record – has been borne out. Defendant is entitled to summary judgment on the First Amendment claim based on the public concern issue.[1]

---

[1] The fact that Plaintiff was speaking in her capacity as Union president cannot convert matters which are not public concern into matters of public concern. *Cavanaugh v. McBride*, 33 F.Supp.3d 840, 848 (E.D. Mich. 2014) (Union president's activities not protected unless the "actions as Union president related to matters of public concern. They did not"). A complaint about part-time faculty parking space priority is not a matter of public concern, regardless if the complaint is expressed by one faculty member, or the President of the part-timers' union on behalf of her bargaining unit.

**B.**     **Recklessness-Falsity.**

The substance of Plaintiff's response on the issue of falsehood or reckless disregard is found at pgs. 6-7 of her response.  In essence, Plaintiff argues – with no analysis of the record – that Plaintiff's Letter is simply "an honest expression of the opinions" of her Union members and "pure opinion absolutely protected by the First Amendment."  Mem. at 6, 7.  In order to make that argument, Plaintiff ignores the record and her stunning series of deposition admissions.

As to Plaintiff's "mere conduit" argument, there is no relationship between the survey results (Doc. # 45-13, Def. Ex. 21 at pgs. 1-5) and the Exhibit 5 Letter to the League.  The Court may search high and low through the survey results without finding any support for Meade's assertions to the League like the College "considers the adjuncts a disposable resource," considers them "a separate lower class of people," and the adjuncts are experiencing a "chilling effect." Virtually nothing in the Letter is borne out by the survey results (Def. Ex. 21). Therefore, the Court should reject the argument that Plaintiff was simply paraphrasing the results of the survey.

Second, the Letter makes many assertions of fact that go far beyond mere opinion. Examples:  "Consistently decisions are made to allocate resources to the administration full-time faculty and staff, while the adjuncts are often left to fend for themselves . . . Adjuncts who have taught innovatively for years are refused classes with no justification . . . the long-standing adjunct discount for access to the health center was discontinued by the administration."  These are not expressions of opinions. They are assertions of fact capable of being assessed for the truth, all of which Plaintiff admitted were untrue.

Third, by virtue of their positions at the institution, the College officials knew that these statements were false.  See DSOF 71 (Haney Affidavit incorporating prior testimony); DSOF 40-43 (President Jenkins testimony as to why she considered the Letter to be false and defamatory).

This is not a case where Plaintiff made a charge which would require an extensive internal investigation to determine, for example, whether there is an extraordinarily high turnover rate among adjuncts, or whether adjuncts are being denied supplies or health insurance, or whether adjuncts are being routinely denied their class selection preferences.

The various statements in Plaintiff's Letter cannot reasonably be construed as mere expressions of opinion. Like *Kristofek*, Plaintiff's statements are the educational equivalent of the "public corruption" charges made by the Plaintiff police officer in that case. 63 F.Supp.3d at 861.

Plaintiff cannot ignore her multiple admissions that the statements in her Letter were knowingly false, or made with reckless disregard of the truth. That is an essential element of her claim, because public concern speech loses its protected status "if the public employee knew it was false or made it in reckless disregard of the truth." *Gazarkiewicz v. Town of Kingsford Heights, Indiana*, 359 F.3d 933, 942 (7th Cir. 2004).

As in *Kristofek*, Plaintiff's Letter and deposition admissions "use onerous phrases" such as "chilling effect," "second class citizens," "slaves," "adjuncts left to fend for themselves," and the like. But Plaintiff's deposition admissions (Def. Ex. 19; DSOF 54-68) demonstrate that virtually every assertion in that Letter was either knowingly false or made with a reckless disregard for its truth, and was not a simple recasting of the survey responses. Plaintiff admitted that her statement regarding the lack of materials and supplies was not true. DSOF 58. She admitted that contrary to what she was contending in the Letter, the College was doing a good job providing resources to adjuncts. DSOF 59. She admitted that her "disposable asset" allegation was inconsistent with the reality that the vast majority of adjuncts returned year after year. DSOF 60.

She admitted attempting to mislead the reader into believing that the College refused adjuncts class assignments with no justification as a standard practice, when, in fact, that occurred

to a very, very small percentage of teachers. DSOF 61. She admitted the "chilling effect" contention was her own rhetorical flourish and not even part of the survey. DSOF 62. She admitted that the reason adjuncts don't have health insurance was not a matter of employer imposition but collective negotiation. DSOF 63.

This summary is not exhaustive, but it reveals a person who made a deliberate decision to send the Letter to a group of college presidents, when she either (i) knew that much of the content was false, or (ii) recklessly disregarded the truth of her poison assertions. Plaintiff's complete failure to address this issue head on in her responsive memorandum is a tacit concession as to what Defendant has demonstrated as to those statements.

In *Kristofek,* this Court noted that while the issue of whether an employee recklessly disregarded the truth in making statements may frequently present questions of fact, "summary judgment may be appropriate if the undisputed facts show that the employee acted without any legitimate basis." 63 F.Supp.3d at 862. The undisputed facts as set forth in DSOF 54-69 set forth undisputed facts showing that Plaintiff "lacked any legitimate basis" when she made her accusations of educational tyranny against the College administration to the other college presidents.[2] The College is entitled to summary judgment on the issue of recklessness.

### C.  Employer's Reasonable Belief.

Even if this Court were to find that there were fact questions as to the falsity or recklessness of the various charges leveled by Plaintiff in the Letter, Plaintiff's summary judgment concessions as to Plaintiff's admissions entitle Defendant to summary judgment. It is undisputed that President Jenkins acted based on her belief that the charges were false and reckless. DSOF 38-43; DSOF

---

[2] During the course of her deposition, Meade stipulated that she would give the answers if the IELRB questions were asked of her at the deposition. Def. Ex. 28; Meade Dep. at 113-14. Accordingly, the Court may treat Plaintiff's IELRB testimony as deposition testimony in this case.

71.  The record establishes that this belief was reasonable, especially in light of Plaintiff's subsequent admissions.

Swetlik holds that "an employer may defeat a First Amendment retaliation claim" if the supervisory decisionmakers "reasonably believe" that the employee's statements were false, even if they actually were true. 738 F.3d at 828. Given her long tenure at the institution (Jenkins Dep. 7-9), Jenkins knew without the need for any sort of extended internal investigation that the charges set forth in the Letter were false. Jenkins knew that the College provided significant support services to the adjuncts; she knew the consistently long tenure of adjunct faculty members with the institution; she knew that the efforts the College made in providing enhanced educational opportunities to adjuncts for professional development; and she knew that the various other matters set forth in the Letter to support Plaintiff contention that the College treated adjunct faculty members as a "separate lower class of people" were false. DSOF 41-42.

In Swetlik, the Court upheld summary judgment in favor of the Defendant employer based on the employer's reasonable conclusion that the employee's statements were false. 738 F.3d at 828. Similar considerations apply in this case entitling Defendant to summary judgment on the "reasonable belief" issue. There is no evidence which would show that the College president "did not believe" Plaintiff had lied, "but instead wanted to retaliate against [her] for [her] Union activities." Swetlik, 738 F.3d at 829. The undisputed evidence shows that President Jenkins honestly believed that Plaintiff's Letter to the college presidents was false and defamatory; the record underscores the reasonableness of her conclusion.

As a matter of First Amendment jurisprudence, "so long as the employer honestly and reasonably believes that the workplace speech is inappropriate or disruptive, then the Constitution permits a response whether the speech in question was true or false, disruptive or not." Taylor v.

13

*Carmouche*, 214 F.3d 788, 793 (7th Cir. 2000). Defendant is entitled to summary judgment on the First Amendment claim based on the undisputed evidence showing that President Jenkins honestly and reasonably believed Plaintiff's Letter was replete with false and reckless assertions.

### D. Summary of the Defense Arguments on the First Amendment Claim.

For the reasons set forth above, Defendant is entitled to summary judgment on the First Amendment claim for any of these three alternate grounds:

1. The record demonstrates that the Letter does not constitute speech by a citizen on a matter of public concern.

2. The record demonstrates that the assertions set forth in the Letter are either knowingly false or issued with a reckless disregard on the part of Plaintiff for the truth or falsity of those assertions.

3. The undisputed evidence shows that the College decisionmaker honestly and reasonably believed that Plaintiff's speech was false, recklessly made or otherwise inappropriate.

Accordingly, Defendant is entitled to summary judgment on the First Amendment issue.

Respectfully submitted,

Moraine Valley Community College

By:_____s/John B. Murphey_____
                    Attorney for Defendant


JOHN B. MURPHEY
Rosenthal, Murphey, Coblentz & Donahue
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. 312.541.1040/Fax. 312.541.9191

14

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2015, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of said filing to all parties listed below:

Wayne B. Giampietro
Poltrock & Giampietro
123 W. Madison Street
Suite 1300
Chicago, Illinois 60602
312-236-0606
wgiampietro@wpglawyers.com

Kurtis R. Hale
Poltrock & Giampietro
123 W. Madison Street
Suite 1300
Chicago, Illinois 60602
312-236-0606
krhalejd@hotmail.com

Melissa J. Auerbach
Dowd, Bloch, Bennett, Cervone,
Auerbach& Yokich
8 South Michigan Avenue, 19th Floor
Chicago, Illinois 60603
312-372-1361
mauerbach@dbb-law.com

Channing M. Cooper
American Federation of Teachers
555 New Jersey Avenue N.W.
Washington, D.C. 20001
202-393-7473
cooper@aft.org

        /s/    John B. Murphey
ROSENTHAL, MURPHEY, COBLENTZ & DONAHUE
Attorney for Moraine Valley Community College
30 North LaSalle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax (312) 541-9191