IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **Robin Meade** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No.: 1:13−cv−07950** |
| | ) | |
| **Moraine Valley Community College** | ) | **Honorable Samuel Der−Yeghiayan** |
| | ) | **Magistrate Judge Michael Mason** |
| **Defendant.** | ) | |

*AMICUS CURIAE* **BRIEF OF THE AMERICAN FEDERATION OF TEACHERS IN
SUPPORT OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

I.      INTERESTS OF AMICI CURIAE

The interests of amicus curiae are set forth in the accompanying motion[1] for leave to file

this brief that was granted by the Honorable Samuel Der-Yeghiayan on October 27, 2015, and

are not repeated here.

II.     FACTS

The following statement sets forth the facts that are relevant to the arguments of *Amicus

Curiae*.

In the summer of 2013, the Defendant, Moraine Valley Community College, asked the

leaders of each union present on the college campus to write letters supporting the Defendant's

---

[1] *See* Exhibit 1 attached.

1

continued affiliation with the League for Innovation in the Community College (hereinafter, "LICC") board. Instead, the Plaintiff, then-president of Moraine Valley Adjunct Faculty Organization (hereinafter, "MVAFO"), the adjunct faculty union at the college, wrote a letter to the LICC board explaining why she and her union rejected the college's request to submit a positive reference. With the approval of her union board, the Plaintiff accused the Defendant of treating adjunct faculty as "a disposable resource" and "a separate, lower class of people," allocating more resources to full-time faculty and staff, and leaving adjuncts "to fend for themselves." She also attributed the high failure rates in developmental classes at the college to the Defendant's inadequate support for adjuncts. Plaintiff wrote that the Defendant would not pay adjuncts to tutor students despite the need. In addition, Defendant noted in her letter that adjuncts were underpaid and not provided proper access to health care.

Plaintiff sent her letter to LICC on August 20, 2013. By August 22, 2013, Defendant had terminated Plaintiff. Andrew Duren, the college's executive vice president, wrote a memorandum to the Plaintiff informing her that the college had received the letter and believed the letter was "not consistent with the best interests of the College" and therefore decided to terminate Plaintiff's employment effective immediately. Approximately two weeks after Plaintiff was notified that she was terminated, she received an email notice from the chief of the college's police force prohibiting her from physically accessing the college campus.

In an action brought in this court, Plaintiff sued the college under 42 U.S.C. § 1983 claiming in part that she was retaliated against for exercising her constitutional right to freedom of speech. This court held in favor of the Defendant dismissing Plaintiff's claim for failure to state a claim reasoning that Plaintiff's letter did not address matters of public interest and thus could not serve as the basis of a First Amendment retaliation claim. On review, the Court of

Appeals overturned this court's decision and held that the Plaintiff's letter was a matter of public concern and thus was constitutionally protected. The Court of Appeals remanded the case and instructed this court to decide the remaining two issues the Plaintiff's case raises regarding her First Amendment protections: whether the speech was a substantial or motivating factor in the retaliatory action, and whether the defendant can show that it would have taken the same action without the existence of the protected speech.

### III.    SUMMARY OF ARGUMENT

American democracy stands on the shoulders of the First Amendment. *See, e.g.*, *Speiser v. Randall*, 357 U.S. 513, 530, 78 S.Ct. 1332, 2 L.Ed.2d 1460 (1958) (Black, J., concurring) (stating that the freedoms secured by the First Amendment "are absolutely indispensable for the preservation of a free society in which government is based upon the consent of an informed citizenry and is dedicated to the protection of the rights of all"). Through the guarantees of freedom of association and freedom of speech, self-governance is possible. When these fundamental guarantees are at risk, the highest level of judicial scrutiny is warranted. Against this backdrop, *Amicus* submits this brief to consider the significant implications this case will have on MVAFO's and its members' First Amendment right to associate and engage in union advocacy on behalf of one another.

For almost six decades federal courts have recognized that the freedom of association[2] is an essential part of the First Amendment. Stemming from that guarantee is a union member's

---

[2] This brief only relies on the federal courts' jurisprudence regarding expressive association under the freedom of association doctrine as opposed to intimate association. Expressive association is the right to associate for the purpose of engaging in activities independently protected by the First Amendment such as speech, association, assembly, worship, and petition. "Expressive association exists solely as an

3

right to advocate on behalf of his or her union. Here, the Plaintiff was summarily terminated for engaging in such protected activity.[3] In turn, MVAFO and its members' associational rights fall at risk as the fear of reprisal inhibits union activity. The chilling effect ripples through the union resulting in a devastating outcome of abridged constitutional protections.

*Amicus* respectfully encourages this court to consider the damning precedent that Defendant's retaliatory actions will have on the associational protections afforded to union members. Union members and leaders must be at liberty to speak on behalf of the union in furthering its interests without the fear of reprisal. Indeed, the chilling effect will impair the union's and its members' ability to further their mission to promote their own collective interests, a right guaranteed by the freedom of association.

### IV.     ARGUMENT

#### a.  The First Amendment Freedom of Association Protects Unions' and their Members' Right to Engage in Union Activity

The Supreme Court has long acknowledged that the First Amendment protects an individual's and association's right to advocate, as well as "the association's right to engage in advocacy on behalf of its members." *N. A. A. C. P. v. Button*, 371 U.S. 415, 83 S.Ct. 328, 9 L.Ed.2d 405 (1963); *Thornhill v. Alabama,* 310 U.S. 88, 60 S. Ct. 736, 84 L. Ed. 1093 (1940); *Smith v. Arkansas State Hwy. Employees Local 1315,* 441 U.S. 463, 465 99 S. Ct. 1826, 60 L.

---

instrument for or a means of preserving and enhancing" such primary First Amendment liberties. Mark Strauss, *Public Employees' Freedom of Association*, 61 Fordham L. Rev. 473, 486 (1992); *see New York State Club Ass'n v. City of New York*, 487 U.S. 1, 13 (1988). Intimate association, on the other hand, is the right to form and preserve "highly personal relationships [free] from unjustified interference by the State." *Roberts v. United States Jaycees*, 468 U.S. 609, 618 (1984).

[3] *Amicus*'s freedom of association argument is not a new claim on behalf of the Plaintiff. Rather, *Amicus* relies upon the Plaintiff's right to associate in order to substantiate the chilling and impeding effect that the Defendants' retaliatory actions will have on MVAFO's right to associate.

Ed. 2d 360 (1979). The right of association recognizes the value of expression through "collective effort[s]." *See Citizens Against Rent Control v. City of Berkeley,* 454 U.S. 290, 294, 102 S.Ct. 434, 70 L.Ed.2d 492 (1981). ("[B]y collective effort individuals can make their views known, when, individually, their voices would be faint or lost."). Under this framework, the Seventh Circuit has held that "public employees cannot be discharged for engaging in 'union activities'" such as "the expression of [the union's] views to employees and to the public." *Hanover Twp. Fed'n of Teachers, Local 1954 (AFL-CIO) v. Hanover Cmty. Sch. Corp.*, 457 F.2d 456, 460 (7th Cir. 1972); *see Cunningham v. Vill. of Mount Prospect*, No. 02 C 4196, 2002 WL 31628208, at *4 (N.D. Ill. Nov. 19, 2002) *citing McLaughlin v. Tilendis,* 398 F.2d 287 (7th Cir.1968); *see also Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014) (noting that Plaintiff's letter with multiple references to the concerns that the union had "*as a group*" against the Defendant/Employer, "remove[d] it from the realm of the purely personal" making it a matter of public concern that afforded constitutional protections.) (emphasis added). Furthermore, it is the jurisprudence of federal courts that the government cannot infringe upon the union's and its members' associational guarantees by retaliating against "the expression of particular views it opposes." *See* 441 U.S. at 464 *citing N.A.A.C.P. v. Button*, 371 U.S. 415 (1963). Simply put then, when a union leader/advocate speaking on behalf of the union to an issue that is important to the membership, that speech is constitutionally protected.

The public-sector union's and its members' rights to free association are core, fundamental rights that include the right to speak critically of the public-sector employer on matters of public concern.[4] These rights are deemed an integral part of a free democratic society.

---

[4] The Court of Appeals held that Plaintiff's letter fell "squarely among matters that are of public concern." Meade v. Moraine Valley Cmty. Coll., 770 F.3d 680, 686 (7th Cir. 2014). *Amicus* agrees with the

Any limitation of these rights is "subject to the closest scrutiny" and can be upheld only if it serves an overriding state interest. *Nat'l Ass'n for Advancement of Colored People v. State of Ala. ex rel. Patterson*, 357 U.S. 449, 460-61, 78 S. Ct. 1163, 1171, 2 L. Ed. 2d 1488 (1958)**;** *Pickering v. Bd. of Ed. of Twp. High Sch. Dist. 205, Will Cty., Illinois*, 391 U.S. 563,  88 S. Ct. 1731, 20 L. Ed. 2d 811 (1968).

### b.   A Decision in Favor of the Defendant will Have Disastrous Ramifications on the First Amendment Associational Rights of the MVAFO Union Members

The Defendant terminated the Plaintiff for simply doing a job in which she is afforded constitutional protections: advocating on behalf of fellow union members. Retaliation against union leaders has the coercive domino effect of not just affecting the leaders' associational rights, but also those same rights of the members whom the union leaders represent. As word spreads of the reprisal, the adverse employment action has an undeniably permeating chilling effect over union activity within the affected bargaining unit. *See Pickering v. Bd. of Educ,* 391 U.S. 563, 574 (1968) (noting that the threat of termination is a "potent means of inhibiting protected speech").[5] When an employer's retaliatory actions against a union advocate chills the union activity of other members, the affected members' First Amendment rights are in turn also inhibited as those members no longer feel at liberty to engage in the right to associate with the union.

---

Plaintiff's contention that the Court of Appeals's decision on the issue of public concern is the law of the case. *See* Memorandum in Opposition to Defendant's Motion for Summary Judgement, p. 3-4.

[5] *Amicus* recognizes that the Illinois Educational Labor Relations Act (hereinafter, "IELRA") contains prohibitions against interfering with union activity. However, the protections afforded under the IELRA do not preclude a union's and its members' right from seeking redress under the First Amendment as well. *See Cunningham v. Vill. of Mount Prospect*, 2002 WL 31628208, at *4 (N.D. Ill. Nov. 19, 2002); *see also Berry v. Illinois Dep't of Human Servs.,* 2001 WL 111035 (N.D.Ill.) *citing Air Line Pilots Association v. Miller,* 523 U.S. 866, 118 S.Ct. 1761, 1763–64, 140 L.Ed.2d 1070 (1998).

6

The Seventh Circuit holds that "*any*" deterrent of the exercise of one's First Amendment rights is actionable. S*piegla v. Major Eddie Hull*, 371 F.3d 928, 941 (7th Cir. 2004) *citing Bart v. Telford,* 677 F.2d 622, 624 (7th Cir.1982). Thus, even in the absence of an actual adverse employment action, such as a disciplinary action taken by the employer, the Seventh Circuit embraces the notion that any action which deters or chills an employee from exercising his or her constitutional right to free speech is sufficiently recognizable under 42 U.S.C. § 1983. Elizabeth J. Bohn, *Put on Your Coat, A Chill Wind Blows: Embracing the Expansion of the Adverse Employment Action Factor in Tenth Circuit First Amendment Retaliation Claims*, 83 Denv. U. L. Rev. 867, 876 (2006). For these reasons, we respectfully ask that this court consider the chilling effect that a holding in favor of the Defendant in this case will have on the associational rights of the MVAFO union members.

The potential for Defendant's actions to chill the MVAFO's and its members' First Amendment rights of association is enormous. Union members will be afraid to engage in protected union activity for fear of being terminated. Such fear is certainly understandable as termination is the most severe and punitive form of discipline that can be levied upon an employee. The National Labor Relations Board, Illinois Labor Relations Board, and federal courts have found that threats of job loss and the actual discharge of union adherents are "highly coercive" in deterring employees from engaging in union activity "because of their potentially long-lasting impact." *See eg., Nat'l Steel Supply, Inc. & Int'l Bhd. of Trade Unions, Local 713*, 344 NLRB 973, 976-77 (2005); *see also Van Vlerah Mech., Inc. v. N.L.R.B*., 130 F.3d 1258, 1262 (7th Cir. 1997); *see NLRB v. Q-1 Motor Exp., Inc.,* 25 F.3d 473, 477 (7th Cir.1994); *Central Transp., Inc. v. NLRB,* 997 F.2d 1180, 1189 (7th Cir.1993); *NLRB v. Jamaica Towing,* 632 F.2d 208, 212 (2d Cir. 1980); *Pace Suburban Bus Div. of Reg'l Transp. Auth. v. Illinois*

*Labor Relations Bd.*, 942 N.E.2d 652, 658 (2010). Obviously, the coercive and chilling effect on union members' right to engage in associational activities is amplified when a union leader is terminated for engaging in union speech on behalf of her members. *See NLRB v. Longhorn Transfer Service, 346 F.2d 1003, 1006 (5th Cir. 1965)* ("[T]he discharge of a leading union advocate is a most effective method of undermining a union organizational effort."). Consequently, if the employer is allowed to terminate its employees for engaging in union speech on matters of public concern, the union becomes mute without its core asset: its own collective voice. The essential function of the union, vocal advocacy, is gutted resulting in an unwarranted violation of the union members' right to associate with each other.

The public also suffers when labor speech is chilled. In its review of anti-picketing regulations, the Supreme Court recognized in *Thornhill v. State of Alabama*, 310 U.S. at 103, that the public relies on unions to disseminate information concerning labor disputes:

> It is recognized now that satisfactory hours and wages and working conditions in industry and a bargaining position which makes these possible have an importance which is not less than the interests of those in the business or industry directly concerned. The health of the present generation and of those as yet unborn may depend on these matters, and the practices in a single factory may have economic repercussions upon a whole region and affect widespread systems of marketing. **. . .** Free discussion concerning the conditions in industry and the causes of labor disputes appears to us indispensable to the effective and intelligent use of the processes of popular government to shape the destiny of modern industrial society. The issues raised by regulations, such as are challenged here, infringing upon the right of employees effectively to inform the public of the facts of a labor dispute are part of this larger problem.

Thus, in the Court's view, unions do not just serve their own members' interests, but also that of the public's to be aware of the effect that a certain industry may have on public interests.

As the Supreme Court noted in *Pickering*, public employees may often be "best informed on

matters of public concern related to their jobs." 770 F.3d 680, 685 (7th Cir. 2014) *citing*

*Pickering,* 391 U.S. at 571–72 . In the case here, the Plaintiff's letter reflected on the negative

effect that the college's poor treatment of adjunct faculty had on student performance. *Id.*

Certainly, student performance at a publicly-funded college is of general public interest. *See,*

*e.g.,* Antoinette Flores, *How Public Universities Can Promote Access and Success for All*

*Students*, September 9, 2014 (*available* at https://cdn.americanprogress.org/wp-

content/uploads/2014/09/FloresCaseStudy-brief.pdf) (last visited Dec. 10, 2015).


**V. CONCLUSION**

There is nothing that the Plaintiff in this case did that any other union leader would not

do under similar circumstances. In response to a request from the Defendant to write a positive

recommendation supporting the Defendant's reapplication to LICC, the Plaintiff engaged the

members of MVAFO and sought their opinions in order to determine what would be the most

appropriate response to the Defendant's request. Based on the general consensus from the

MVAFO membership, the Plaintiff believed she could not provide LICC with a positive

recommendation of the college. She then, with the approval of the MVAFO Executive Board,

wrote a letter to LICC on behalf of the MVAFO members sharing their opinion on the Defendant

regarding important educational and resource issues that affect adjuncts and their students. Her

actions can be characterized as nothing but zealous advocacy on behalf of the MVAFO

membership while informing the public of issues regarding the staffing and support of the

community college's classes that are of significant concern to the members of the community.

Because of the broad implications that the present case has on the First Amendment rights of the MVAFO members and other union members in the Seventh Circuit, especially adjunct faculty, careful scrutiny of the interests at stake are required. The guarantees of the First Amendment fortify the right of the union and its members to engage in union advocacy. *Amicus* is greatly concerned that the fear of reprisal will hinder the advocacy of its members' rights in the workplace and thus extinguish the right of union leadership to speak out on important and sometimes controversial matters that impact the employer, its employees and the public. This case will not only set the precedent for MVAFO members, but union members throughout this court's jurisdiction. For these reasons, we respectfully ask the court to consider the broader ramifications discussed herein and grant the Plaintiff's Motion for Summary Judgment with respect to the Plaintiff's claim for retaliation in violation of her First Amendment rights.

Respectfully submitted,

/s/ Channing M. Cooper

AMERICAN FEDERATION OF TEACHERS
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
Tel. (202) 393-7473
Fax (202) 393-6385
(*pro hac vice* admission)

Date: December 14, 2015

10

## CERTIFICATE OF SERVICE

I hereby certify that on December 14, 2015, I electronically filed the foregoing document with

the Clerk of the Court using the CM/ECF system.

I hereby certify that on December 14, 2015, a copy of the foregoing document was also mailed

first class, postage paid to parties listed below:

Wayne B. Giampietro
Kurtis R. Hale
POLTROCK & GIAMPIETRO
123 W. Madison Street
Chicago, Illinois 60602

John B. Murphey
ROSENTHAL, MURPHEY, COBLENTZ & DONAHUE
30 North La Salle Street, Suite 1624
Chicago, Illinois 60602
Tel. (312) 541-1070
Fax (312) 541-9191

/s/ Channing M. Cooper

AMERICAN FEDERATION OF TEACHERS
555 New Jersey Avenue, N.W.
Washington, D.C. 20001
Tel. (202) 393-7473
Fax (202) 393-6385
(*pro hac vice* admission)

Date: December 14, 2015