IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN MEADE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 7950 |
| ) | |
| MORAINE VALLEY COMMUNITY ) | |
| COLLEGE, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on Plaintiff Robin Meade's (Meade) motion for summary judgment on the issue of liability and on Defendant Moraine Valley Community College's (College) motion for summary judgment. For the reasons stated below, both motions are denied.

## BACKGROUND

Meade was allegedly employed by the College pursuant to a written employment agreement (Employment Agreement) as an adjunct faculty member for the first semester of the 2013-2014 school year, with an alleged further understanding that she would also teach during the second semester of that year. Meade was allegedly the President of the Moraine Valley Adjunct Faculty

1

Organization (MVAFO). According to Meade, in November 2012, an officer of the College asked Meade to prepare a letter of recommendation in her capacity as President of MVAFO supporting the College's affiliation with the League for Innovation in the Community College (League). Meade claims that she refused to write the letter of recommendation and instead wrote a letter on behalf of MVAFO members (Letter) setting forth the position of MVAFO members regarding complaints and criticisms from adjunct faculty members regarding their workplace conditions. Meade allegedly sent the Letter only to the League.

In August 2013, Andrew Duren (Duren), the Executive Vice President of the College, allegedly wrote a letter to Meade (Termination Letter) terminating Meade's employment with the College. Meade contends that Duren acted at the direction of the College President. Meade claims that Duren included false statements in the Termination Letter and terminated Meade's employment in retaliation for her exercise of her First Amendment right to freedom of speech.

Subsequent to Meade's termination, the College also allegedly sent Meade an Official Notice, which informed Meade that she was forbidden from appearing on campus and that she would be arrested if she appeared on campus for issues other than her own labor issues. Meade contends that the College improperly interfered with her performance as President of the MVAFO and deprived the members of the MVAFO of the services of their President. Meade also filed a claim before the Illinois Educational Labor Relations Board (IELRB), which has already determined that the College committed an unfair labor practice in violation of the Illinois

Educational Labor Relations Act when it terminated Meade's employment and ordered the College to reinstate Meade to her position and reimburse her for her lost salary, plus interest.

Meade brought the instant action and included in her complaint a claim brought pursuant to 42 U.S.C. § 1983 (Section 1983) alleging retaliation for the exercise of the First Amendment right to freedom of speech (Count I), a Section 1983 due process claim (Count II), and a claim premised on an alleged violation of Illinois public policy (Count III). On January 31, 2014, this court dismissed the instant action and November 21, 2014, the Seventh Circuit remanded this case back to this court.

In the instant action, Meade has now filed a motion for summary judgment solely on the issue of liability, and the College has filed a motion for summary judgment. The American Federation of Teachers has also filed an *Amicus Curiae* brief in support of Meade.

## LEGAL STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Smith v. Hope School*, 560 F.3d 694, 699 (7th Cir. 2009). A "genuine issue" in the context of a motion for summary judgment is not simply a "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v.*

*Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Insolia v. Phillip Morris, Inc.*, 216 F.3d 596, 599 (7th Cir. 2000). In ruling on a motion for summary judgment, the court must consider the record as a whole, in a light most favorable to the non-moving party, and draw all reasonable inferences in favor of the non-moving party. *Anderson*, 477 U.S. at 255; *Bay v. Cassens Transport Co.*, 212 F.3d 969, 972 (7th Cir. 2000). When there are cross-motions for summary judgment, the court should "construe the evidence and all reasonable inferences in favor of the party against whom the motion under consideration is made." *Premcor USA, Inc. v. American Home Assurance Co.*, 400 F.3d 523, 526-27 (7th Cir. 2005).

## DISCUSSION

I. *Amicus* Brief

The American Federation of Teachers has filed an *amicus* brief in support of Meade. The court notes that although the title of the brief and relief sought indicate that the brief is presented solely in support of Meade's motion for summary judgment, the brief does not address the legal standard for a summary judgment motion. The brief focuses on the potentially harmful effect of precedent in this case

if the College were to prevail on its motion for summary judgment, such as the potential chilling effect on unions and their members, but the brief does not address why Meade should prevail on her motion for summary judgment as a matter of law. The court has considered the *Amicus* brief.

II. Partial Cross-Motions For Summary Judgment

As indicated above, Meade has pled three claims in this case. In Count III, Meade bases a claim upon a violation of Illinois public policy. The court in initially dismissing this action did not dismiss the public policy claim in Count III on its merits. Rather, the court declined to exercise supplemental jurisdiction over such a claim since all of the federal claims had been dismissed. On appeal, the dismissal of the public policy claim in Count III was not raised. However, since the federal claims have been revived in this case, the state law claim in Count III relating to public policy is also revived.

III. Section 1983 First Amendment Retaliation Claim (Count I)

The College argues that the evidence shows that the Letter is not protected by the First Amendment. A plaintiff who was a "public employee," that brings a First Amendment retaliation claim must show, "at a minimum, that the speech being retaliated against" is "constitutionally protected, which means that the speech must involve a matter of 'public concern.'" *Kristofek v. Village of Orland Hills*, 712 F.3d 979, 984 (7th Cir. 2013)(quoting in part *Chaklos v. Stevens*, 560 F.3d 705, 712 (7th

Cir. 2009)). The determination of "[w]hether a statement rises to the level of public concern is a question of law, and in answering this question [the court should] look to the content, form, and context of the statement." *Id.* In *Garcetti v. Ceballos*, 547 U.S. 410 (2006), "the Supreme Court held that when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Chrzanowski v. Bianchi*, 725 F.3d 734, 737-38 (7th Cir. 2013)(quoting *Garcetti*, 547 U.S. at 421)(internal quotations omitted); *see also Swetlik v. Crawford*, 738 F.3d 818, 826 (7th Cir. 2013)(explaining that in *Garcetti* the Court held that "a public employee's statements made pursuant to official duties are not made as a private citizen for the purposes of the First Amendment").

### A. Waiver and Estoppel

The College argues that Meade should be estopped from arguing that she was speaking as a matter of public concern because she pursued relief before the IELRB. The College argues that in order to seek relief before the IELRB, Meade had to take the position that she was acting as an employee and not a private citizen. The College, however, cites no case that has applied the doctrine of estoppel in such a manner or has held that seeking relief before the IELRB would bar a party from also pursing a Section 1983 First Amendment retaliation claim. Meade has also shown that she was only able to obtain certain relief before the IELRB and that the relief she

6

seeks in the instant action was not available with the IELRB. Nor has the College explained why it did not raise this issue at the motion to dismiss stage or on appeal since the issues addressed by the Seventh Circuit on appeal would have been moot if this argument had prevailed. Thus, there has not been any waiver of rights by Meade that would preclude her from pursuing her Section 1983 First Amendment retaliation claim. The court also notes that Meade has argued that the College should be estopped from taking certain positions based on the ruling by the IELRB. However, such ruling related to unfair labor practices and involved a different legal standard and does not impede the College from presenting a defense in this case.

### B. Matter of Public Concern

The College argues that the evidence shows that the Letter addressed private interests and not a matter of public concern. The College points to *Marshall v. Porter Cty. Plan Comm'n*, 32 F.3d 1215 (7th Cir. 1994), in which the Seventh Circuit held that "[m]otive may play some part in determining whether the speech is of public concern because speech that promotes a purely private interest is not protected." *Id.*; (C SJ Mem. 6). The College contends that Meade presented in the Letter a "string of pedestrian job complaints" and intended to promote Meade's private interests instead of matters of public concern. (C SJ Mem. 7). The College continues to argue, as it did at the motion to dismiss stage, that the content of the Letter has "nothing to do with matters of public concern." (C SJ Mem. 8). However, the Seventh Circuit has already ruled otherwise in this case. The Seventh Circuit

stated on appeal that although a court can consider the content, form and context of the statement in the Letter, of the "three considerations, content is the most important." *Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 684 (7th Cir. 2014). The Seventh Circuit also held that the content of the Letter clearly indicated that Meade was at least in part speaking out on a matter of public concern, stating that "it is difficult to see how any part of" the discussion in the Letter "could be considered purely personal to Meade, or of zero interest to the public." *Id.* at 685. The Seventh Circuit stated that it must look to the "overall objective or point" of the Letter and stated that it had "no trouble concluding that [the Letter] discussed several matters of public concern," further stating that "[i]n fact the [Letter] contained almost no content personal to Meade." *Id.* at 684. In addition, the Seventh Circuit stated that it has never held that "speech that is partly about a matter of public interest but also touches on private concerns is without constitutional protection." *Id.* at 685. The Seventh Circuit further explained that "a person's motive is not dispositive in the analysis of whether a communication discusses issues of public concern" and that "[i]n a case such as this one, where the content of the letter touches on multiple topics in which the public would be interested, the writer's motive . . . is useful only to the extent that it may shed light on ambiguous statements." *Id.* Thus, the Seventh Circuit has already held in this case that the content factor favors Meade. At the summary judgment stage, the College has not pointed to any evidence to show that the content of the Letter was any different than the content reviewed on appeal.

      The College also argues that the court should consider the context, timing and

the form of the statements made in the Letter to find that Meade was not speaking on a matter of public concern. The College contends that the Letter was sent one day after the College refused to bargain regarding the adjunct hours-cutback issue and that certain MVAFO members have indicated that the Letter was written to retaliate against the College because of its position on the hours-cutback issue. While the College has properly pointed to evidence relating to the context, timing and form of the Letter to support its version of the facts, the College has not shown that the evidence is such that the above-referenced three factors are so heavily weighed in its favor that it should prevail as a matter of law on the Section 1983 First Amendment retaliation claim. In fact, as indicated above, the Seventh Circuit has already held that the content factor favors Meade, which the Seventh Circuit has stated is generally the most important factor to consider. The College has also raised other defenses that present material factual disputes and preclude granting the College's motion for summary judgment. Therefore, the College's motion for summary judgment on the Section 1983 First Amendment retaliation claim is denied.

In regard to Meade's motion for summary judgment, although the Seventh Circuit found that the content factor weighed in favor of Meade, Meade has failed to show that no reasonable trier of fact could find in favor of the College when taking into consideration all of the above-referenced three factors. Although the Seventh Circuit has indicated that at the pleadings stage the content factor favors Meade, the Court did not hold that factor to be dispositive on the matter of public concern determination. The College has also raised certain defenses such as that the College

9

reasonably believed that the Letter was knowingly false or prepared by Meade with reckless disregard for the truth of the various charges. *See Swetlik*, 738 F.3d at 825-26 (stating that "if an employer takes action against an employee for speech that the employer, based on an adequate investigation, reasonably believes to be false, the employer's interests outweigh the speaker's interests"). Based on the record in this case, a determination of what portion of the Letter, if any, was false and whether the College had reason to believe that Meade acted with reckless disregard involve factual determinations that can only be made by the trier of fact. *See id.* at 827 (stating "[w]hether an employee recklessly disregarded the truth in making a statement will often present a disputed factual issue"). In response to the College's motion for summary judgment, Meade in fact argues that the court cannot determine the truth of falsity of the statements in the Letter and that "[s]uch a determination may only be made by a jury after a full trial." (Resp. C SJ 7). Although Meade contends that "[t]he action firing [Meade] was a knee-jerk reaction by an administrator who could not stand to be criticized," that is merely her view of the evidence in this case. (Resp. C SJ 5). The College has pointed to evidence to support its version of the facts and is entitled to present its view of the evidence to the trier of fact. Therefore, Meade's motion for summary judgment on the issue of liability on the Section 1983 First Amendment retaliation claim is denied.

IV.  Section 1983 Due Process Claims

On appeal, the Seventh Circuit held that although Meade failed to state a valid

Section 1983 due process claim based on a deprivation of a liberty interest, Meade had stated a valid claim based upon a deprivation of a protected property interest. *Meade*, 770 F.3d at 688. The College argues that Meade has not shown that she was deprived of a protected property interest, and that even if she had made such a showing, she has waived certain due process rights.

### A. Protected Property Interest

For a Section 1983 due process claim, a plaintiff "must allege a cognizable property interest, a deprivation of that interest, and a denial of due process." *Palka v. Shelton*, 623 F.3d 447, 452 (7th Cir. 2010). An individual can obtain a property interest in continued employment: (1) "by an independent source such as state law securing certain benefits," or (2) "by a clearly implied promise of continued employment." *Id.* (quoting *Phelan v. City of Chicago*, 347 F.3d 679, 681 (7th Cir. 2003)(internal quotations omitted).

The College argues that Meade has not shown that she has a protected property interest in continued employment. On appeal, the Seventh Circuit stated that "[t]o demonstrate a cognizable property interest in her job at Moraine Valley, Meade must be able to show that she had some legitimate expectation of continued employment at the [C]ollege." *Meade*, 770 F.3d at 686. The College points to the affidavit of its Human Resources Director that indicates that adjuncts have no guarantee that they will teach all or any of their assigned classes, because the assigned classes can be taken from them by full-time faculty members, or the

11

assigned classes may be cancelled. On appeal, the Seventh Circuit stated that "[t]he course schedule on Meade's employment agreement provided specific starting and ending dates for her teaching responsibilities and told her what she would be paid for doing so." *Id.* The Court further concluded that "[t]his was sufficient to provide Meade with an expectation of employment at Moraine Valley during the specified time, and thus a cognizable property interest in working at the [C]ollege during that period." *Id.* The College has not pointed to any evidence to challenge such facts regarding Meade's employment. The mere fact that Meade might not end up teaching anticipated courses does not negate her protected property interest. With even the most stringent employment contract there is no absolute certainty that there will be actual employment. For example, a severe natural disaster could make employment impossible. That potential eventuality does not mean there is no protected property interest. Thus, Meade has shown that she has a protected property interest.

    B.  Waiver of Rights

The College argues that Meade waived her due process rights by failing to appear at a pre-termination hearing, and that the extensive post-termination proceedings cured any due process violation.

    1.  Pre-Termination Hearing

The College contends that when Meade was terminated she was immediately

given an opportunity to appear at a pre-termination hearing and that Meade failed to attend the meeting. An employer can accord an employee due process by conducting a hearing in which there is "a determination of whether there are reasonable grounds to believe that the charges against the employee are true and support the proposed action." *Tom Beu Xiong v. Fischer*, 787 F.3d 389, 399 (7th Cir. 2015)(quoting *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985)); *see also Michalowicz v. Vill. of Bedford Park*, 528 F.3d 530, 537 (7th Cir. 2008)(stating that a "pretermination process need only include oral or written notice of the charges, an explanation of the employer's evidence, and an opportunity for the employee to tell his side of the story")(quoting *Gilbert v. Homar*, 520 U.S. 924, 929 (1997))(internal quotations omitted). The College contends vaguely that Duren contacted Meade and was informed that "Meade was unable to meet at the time requested or any time soon." (C Reply 6). Duren testified at his deposition that he had his administrative assistant call Meade and tell her to come to a meeting to discuss the Letter. (Dur. Dep. 48). Duren testified that his assistant informed him that Meade was not able to meet near the time that he had set for the meeting. (Dur. Dep. 48). Duren also testified that he thought the reason for the delay was that Meade was attempting to get a union representative to come to the meeting with her. (Dur. Dep. 48). Duren further testified that he believed that he could not wait for Meade because the Letter involved sensitive issues and a termination decision needed to be made quickly. (Dur. Dep. 48). First of all, such facts are based on Duren's view of the events in question based on what he heard second-hand from his administrative assistant. The

details of the conversation between Meade and Duren's administrative assistant, including any precise deadline given to Meade or her precise response are not presented by the College.

Meade also argues that she reasonably concluded that attending the hearing was a futile action and would not alter the decision to fire her. Meade points to evidence that indicates that the College President had already made the decision to fire her and that nothing she could have said to Duren would have changed that decision. There is not sufficient evidence in the record to conclude as a matter of law whether Meade justifiably failed to appear at the meeting or whether the meeting would have accorded adequate due process to Meade.

### 2. Post-Termination Process

The College argues that even if there was insufficient due process provided to Meade before her termination the Meade filed a grievance after her termination and was accorded a hearing and there were extensive proceedings before the IELRB cured any due process violation. The Seventh Circuit has held that "[t]he nature and extent of the process a public employee is due before termination depend on the adequacy of any post-termination hearing that was available." *Carmody v. Bd. of Trustees of Univ. of Illinois*, 747 F.3d 470, 474-75 (7th Cir. 2014)(stating that "[e]ven where there is a robust post-termination procedure, though, a meaningful opportunity to be heard before the employer decides on termination is a critical protection"). Meade has shown that the proceedings before the IELRB did not and

could not accord Meade all of the relief that she seeks in this action. Thus, the IELRB proceedings could not have provided Meade with a sufficient due process in this case. Further, since the adequacy of post-termination process is tied to the adequacy of the pre-termination process, which in this case must be evaluated by the trier of fact, the post-termination process in this case is not sufficient to warrant an entry of summary judgment in the College's favor. *See Chaney v. Suburban Bus Div. of Reg'l Transp. Auth.*, 52 F.3d 623, 629 (7th Cir. 1995)(stating that "due process requires pre-termination notice and an opportunity to respond even where a CBA provides for post-termination procedures that fully compensate wrongfully terminated employees"); *Sutton v. Bd. of Educ. Bremen High Sch. Dist. 228*, 2015 WL 589863, at *6 (N.D. Ill. 2015)(stating that the "existence of adequate post-termination remedies may serve to limit the scope or truncate the constitutional requirements for a pretermination hearing"). Neither the College nor Meade have shown that the evidence is such that they are entitled to prevail as a matter of law on the Section 1983 due process claims. Therefore, Meade's motion for summary judgment and the College's motion for summary judgment as to such claims are denied.

## CONCLUSION

Based on the foregoing analysis, Meade's motion for summary judgment and the College's motion for summary judgment are denied.

Dated: March 3, 2016

Samuel Der-Yeghiayan
United States District Court Judge