N THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ROBIN MEADE, | ) |
| Plaintiff, | ) ) ) |
| v. | ) CASE NO. 13 C 7950 |
| MORAINE VALLEY COMMUNITY COLLEGE, | ) ) Judge Samuel Der-Yeghiayan ) Magistrate Judge Michael Mason |
| Defendant. | ) |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION IN LIMINE**

NOW COMES Plaintiff, ROBIN MEADE, by her attorneys, and files this memorandum in support of her Motion in Limine regarding the issues to be tried to the Jury herein.

### I. INTRODUCTION

The Court does not write on a clean slate in connection with the issues to be decided by the Jury in this case. The Court of Appeals has spoken on many of the controlling issues in this case in its opinion reversing this Court's dismissal of Plaintiff's case for failure to state a claim. That opinion established a number of issues of law which are binding upon the parties and this Court. Defendant has made several arguments in its unsuccessful Motion for Summary Judgment, which Plaintiff anticipates it will attempt to present to the Jury.

We discuss those issues in the order in which they are raised by Defendant.

### II. FACTS

The only facts which are relevant at this stage of the proceedings demonstrate that Defendant retaliated against Plaintiff for having written a letter to The League for Innovation in the Community College (The League). Defendant decided to terminate her employment the moment its President, Sylvia Jenkins, read the letter. There was no pretense of providing Plaintiff any due process.

The uncontested facts are that on August 22, 2013, two days after she wrote this letter, Plaintiff received a Memorandum from the Executive Vice President of Administrative Services of Defendant, informing her that her employment was "terminated effective immediately." The

memorandum specifically stated that this termination resulted from the August 20 letter written by Plaintiff to the League for Innovation in Community College. Defendant's President, Sylvia Jenkins, had been sent a copy of Plaintiff's letter by other members of The League. She became angry when she read the letter, because she did not like its contents. She called the President of Defendant's Board of Trustees, and read the letter to him over the telephone. He immediately instructed Jenkins to terminate Plaintiff's employment, an action in which Jenkins fully concurred. Jenkins called Andrew Duren to her office, and instructed him to notify Plaintiff that she was to be terminated immediately. (Jenkins Dep. p. 41-43; Duren Dep. p. 32-33)

Although Plaintiff's letter itself indicated that the views set forth were those of the members of the Faculty Union, and directed the readers of the letter to the Union's web site where the results of the survey upon which the letter was based were posted, neither Jenkins, Duren nor anyone else bothered to view that information, or do anything else to learn the facts as to how and why the letter originated. Their mind was made up. Plaintiff was to be fired immediately; nothing else would do. (Duren dep. P. 46-49, 55, 73; Jenkins Dep. p. 45-51)

Plaintiff's written employment agreement, a property right, was terminated without notice or an opportunity for Plaintiff to respond to the charges made against her. Her termination was a *fait accompli.* (Complaint, Exhibit 1)

### III. DEFENDANT MAY NOT BE ALLOWED TO CONTEND THAT PLAINTIFF'S LETTER WAS NOT ON A MATTER OF PUBLIC INTEREST OR CONCERN BUT MERELY INVOLVED "WORKPLACE GRIPES"

Defendant has argued in this case that Plaintiff's letter was not citizen speech on a matter of public concern, but rather "workplace gripes," which Defendant apparently claims are not entitled to first Amendment protection. That issue has been foreclosed by the decision of the Court of Appeals reversing this Court's dismissal of this case. That ruling is the law of the case, binding upon this Court and the parties. *Kathrein v. City of Evanston,* 752 F.3d 680, 685 (7th Cir. 2014).

The Court of Appeals has often reiterated that so long as the issues discussed in the

speech are pertaining to the public interest, the fact that the speaker may have some interest in the issues does not deprive it of the protection of the First Amendment. "We have emphasized that speech of public importance is only transformed into a matter of private concern when it is motivated *solely* by the speaker's personal interests." *Chaklos v. Stevens,* 560 F. 3d 705, 714 (7th Cir. 2009). Even if Plaintiff' felt some personal interest in the issues about which she wrote, her claim is valid so long as one of her purposes in writing her letter to The League was to bring to light what she believed to be negative consequences of Defendant's actions. *Gazarloewicz* v. Town of Kingsford Heights, 359 F.3d 933, 942 (7th Cir. 2004).

The Court of Appeals held, without equivocation, that Plaintiff's letter to The League was on a matter of public interest and concern. It is the overall objective or point of Plaintiff's letter to the League for Innovation in the Community College which determines whether it was on a matter of public interest and concern. Whether Plaintiff's motive was personal or not is of little moment. The contents of Plaintiff's letter are clearly protected by the First Amendment, as it discussed several matters of public concern. Plaintiff's letter echoes what several others have said about colleges and universities across the country who have increasingly become targets of criticism regarding their use of adjunct faculty. *Meade v. Moraine Valley Community College,* 770 F. 3d 680, 684 (7th Cir. 2014).

The Court of Appeals made it abundantly clear that Plaintiff's letter is concerning a matter of public interest and importance. Plaintiff's letter is protected by the First Amendment as a matter of law. That Plaintiff's letter is protected by the First Amendment is not open to discussion.

> It is difficult to see how any part of this discussion could be considered purely personal to Meade, or of zero interest to the public. The people who attend Moraine Valley, along with their families and others who live in the area, no doubt want to know if this practice poses a threat to student performance.
> \* \* \*
> Moraine Valley's arguments to the contrary focus in part on Meade's motive in writing the letter, but that is beside the point. As we already have explained, a person's motive is not dispositive in the analysis of whether a communication discusses issues of public concern. In a case such as this one, where the content of the letter touches on multiple topics in which the public would be interested, the

> writer's motive (whatever it may be—recall that this case is before us on a motion to dismiss and the record contains little beyond the letter itself) is useful only to the extent that it may shed light on ambiguous statements. Moraine Valley also argues that Meade's letter warrants no protection because it was sent privately. But the college cites no authority for such an unqualified proposition. Worse, it fails to acknowledge that Meade was transmitting her criticisms to an organization (the LICC) that includes 800 member institutions and 160 corporate partners.  See *About the League,* League for Innovation in the Community College, http://www. league. org/ league/ about/ about_main. htm. That is hardly confidential. And quite obviously, the letter got around; despite its ostensibly private nature, Moraine Valley had a copy and fired Meade within two days of her sending it.
>         The content of Meade's letter places it squarely among matters that are of public concern. The district court thus erred in concluding that her speech was not constitutionally protected.
> *Meade v. Moraine Valley Community College,* 770 F.3d at 685-86.

The only issues to be considered at this stage of the proceedings regarding Plaintiff's letter and the action taken against her are: 1) whether the speech was a substantial motivating factor in the retaliatory action, and 2) whether Defendant can show that it would have taken the same action without the existence of Plaintiff's protected speech.  770 F.3d at 686

The Court must prohibit Defendant from contending that Plaintiff's letter was not protected speech under the First Amendment.

### IV.  DEFENDANT MUST BE BARRED FROM CONTENDING THAT ITS OFFICERS HAD A "REASONABLE BELIEF" THAT PLAINTIFF'S LETTER WAS KNOWINGLY FALSE OR PREPARED WITH RECKLESS DISREGARD FOR THE TRUTH

Defendant has also argued that it "reasonably believed" Plaintiff's letter was knowingly false or written with reckless disregard for the truth.  That issue is not a defense in this case for Defendant's action against Plaintiff.  As the Court of Appeals has established, the only issues to be determined here are: "whether the speech was a substantial or motivating factor in the retaliatory action, and whether the defendant can show that it would have taken the same action without the existence of the protected speech."  *Meade v. Moraine Valley Community College,* 770 F. 3d 680, 686 (7th Cir. 2014).

A First Amendment retaliation claim involves a three-step analysis: 'First, we must determine whether the employee's speech was constitutionally protected.  Second, the plaintiff

must establish that the speech was a substantial or motivating factor in the retaliatory action. Third, the defendant has an opportunity to establish that the same action would have been taken in the absence of the employee's protected speech." *Chaklos v. Stevens,* 560 F. 3d 705, 711 (Seventh Cir. 2009).

The only defense which is available to Defendant is a showing that plaintiff's actions caused an interference with the employer's enterprise, i.e., some disruption of the employer's work, personnel relationships, or the speaker's job performance. *Craig v Rich Twp H.S. District 227,* 736 F.3d 1110, 1119 (7th Cir. 2013). As the Supreme Court said in *Waters v. Churchill,* 511 U.S. 661, 114 S Ct 1878, 128 L Ed 2d 686 (1994), the Court held that in order to avoid liability for retaliating against an employee's speech, the Government would, "have to make a substantial showing that the speech is, in fact, likely to be disruptive before it may be punished." 511 US at 674

Here, as both Jenkins and Duren admitted, Plaintiff's letter caused no disruption in the operations of Defendant whatsoever. Indeed, they do not attempt to make out a case that they had any belief that there would be any effect upon the operations of the school. Their sole argument was that the letter might somehow affect the school's relationship with The League, an outside agency. Any speculation that Plaintiff's letter would cause disruption in the school's operation is an after the fact attempt to justify the penalization of an employee for making statements the administrators did not like. It has long been the law that where the employer's claim or disruption is merely speculative, the employer's interests are not sufficient to allow it to punish the employee for speech. *Conner v. Reinhard,* 847 F.2d 384, 391 (7th Cir. 1988).

Defendant's claim that they believed Plaintiff's speech to be false is not an issue in this case. The alleged falsity of Plaintiff's speech would be relevant if someone were suing her for defamation. But that is not an issue here. As numerous cases have held, Plaintiff's statements are opinion, which are fully protected by the First Amendment. Indeed, the Court of Appeals has long held that a statement of opinion relating to a matter of public concern is fully protected

unless the one complaining of the speech proves that the speech contains a provably false proposition. *Pope v. Chronicle Publishing Co.,* 95 f.3d 607, 614 (7th Cir. 1996). There is no probably false statement in Plaintiff's letter to the League. Defendant's officials' beliefs regarding the truth or falsity of Plaintiff's statements are wholly irrelevant here. It would be reversible error to allow Defendant to argue that the subjective beliefs of officials like Jenkins and Duran provide some kind of defense to Defendant's violation of Plaintiff's rights.

The contents of Plaintiff's letter are pure opinion, absolutely protected by the First Amendment. Defendant's desperate attempt to justify its blatantly unconstitutional treatment of Plaintiff by after-the fact attempts to find some justification for inexcusably illegal conduct are wholly unavailing. Statements are protected by the First Amendment if they cannot reasonably be interpreted as stating actual facts about their target. *Standing Committee on Discipline v. Yagman,* 55 F. 3d 1430, 1438 (9th Cir. 1995). None of the statements contained in Plaintiff's letter are factual. They are all pure opinion. They are fully protected by the First Amendment. Defendants may not evade liability by claiming that they "thought"Plaintiff's speech was improper. 831 (7th Cir. 1981).

**VI. DEFENDANT MUST BE BARRED FROM CONTENDING THAT PLAINTIFF HAS WAIVED HER DUE PROCESS RIGHTS BY NOT APPEARING AT A HEARING WHICH WAS NEVER OFFERED TO HER**

Defendant has argued that Plaintiff has waived her rights by not appearing at a *Loudermill* hearing. That claim is a pure fabrication. Plaintiff did not refuse to appear for a hearing. When she was notified of the hearing, which was to be held immediately, she informed Duren's secretary that she would not appear without her union attorney to represent her. (Duran Dep. P. 48) Plaintiff clearly had the right to be accompanied by such a representative at a time when there was a threat of adverse action against her. *National Labor Relations Board v. J. Weingarten, Inc.,* 420 U.S. 251, 260, 95 Ct. 959, 43 L. Ed. 2d 171 (1975). To claim that refusing to appear at a Kangaroo Court without a representative to assist her constitutes a waiver of her rights reinforces Defendant's determination to deprive Plaintiff of her constitutional rights.

And, as we have previously demonstrated, appearing at the alleged "hearing" Defendant claims to have offered, would have been entirely futile, as Jenkins had decided that Plaintiff was to be fired. Any alleged hearing would have been a farce, as the decision to terminate Plaintiff's employment had already been made and was irrevocable.

### VII. DEFENDANT MUST BE BARRED FROM CONTENDING THE IELRB PROCEEDINGS HAVE CURED DEFENDANT'S VIOLATION OF PLAINTIFF'S DUE PROCESS RIGHTS

Similarly, the issue regarding Plaintiff's due process rights and the nature of her employment agreement are no longer subject to debate.

> The course schedule on Meade's employment agreement provided specific starting and ending dates for her teaching responsibilities and told her what she would be paid for doing so. This was sufficient to provide Meade with an expectation of employment at Moraine Valley during the specified time, and thus a cognizable property interest in working at the college during that period.
> 
> \* \* \*
> 
> We also reiterated in *Cromwell* that terms of employment can create a property interest if they "evince mutually explicit understandings of continued employment." *Id*. at 364. In this case, that mutual understanding is present in Meade's specified duration of employment
> 
> \* \* \*
> 
> Moraine Valley argues that Meade was subject to the CBA, which deemed her an at-will employee and thus left her without a property interest in her employment at the college. But Meade had a more specific agreement with the college, and her personal employment agreement says nothing about the CBA. It does incorporate "[d]uly established and published Board policy," but there is nothing to suggest that this general language included the CBA. We cannot assume, adversely to Meade, that it did. The relation between the CBA and Meade's own employment agreement is not clear from the pleadings, and so we cannot conclude at this stage that the CBA blocks Meade's claim.
> *Meade v. Moraine Valley Community College,* 770 F 3d. At 687-88

Defendant may not now contend that Plaintiff's letter did not discuss matters of public interest and importance. It lost that argument before the Court of Appeals. The issues regarding Plaintiff's letter are not subject to debate. Plaintiff was fired from her employment solely for writing that letter. Andrew Duren's letter did not equivocate. He made it abundantly clear the sole reason for Plaintiff's discharge from employment was her letter to The League.

Defendant's argument that the decision of the IELRB (which, of course Defendant is

7

appealing) has cured any deprivation of Plaintiff's due process rights. That assertion is also frivolous. Indeed, the case Defendant cites, *Bettendorf v. St. Croix County,* 631 F.3d 421 ((7th Cir. 2011), demonstrates the fallacy of that argument. The Court there recognizes that the alternate procedures must prove adequate to grant Plaintiff full relief for the violation of her rights. While she has prevailed in asserting her grievance, the Order of the IELRB has not, nor could it, provide Plaintiff with the entire relief to which she is entitled for the damages she has suffered as a result of Defendant's conduct toward her.

The IELRB has ordered Defendant to reinstate Plaintiff to her position of employment, and reimburse her for her lost salary, plus interest. (IELRB decision, p. 11). That is far from providing Plaintiff with the complete relief to which she is entitled for Defendant's actions. In addition to the relief awarded by the IELRB, Plaintiff is also entitled to recover in this proceeding compensation for her emotional distress resulting from Defendant's actions against her. *Alston v. King,* 231 F. 3d 393 (7th Cir. 2000. After her termination, Ms. Meade did not want to go anywhere, talk to anyone. Plaintiff felt degraded, worthless and angry and worried about how she would make up the income. (Meade Dep. pp. 20-21)

The Civil Rights Act, 42 U.S.C. 1983, is broadly construed, as its very purpose is to provide a remedy against all forms of official violation of federally protected rights. The fact that Plaintiff may have some rights under the labor statutes of the State of Illinois does not in any way detract from her right to bring this suit, to obtain the full range of damages available to her under that statute. *Golden State Transit Corp. v. City of Los Angeles,* 493 U.S. 103, 110 S.Ct. 444, 107 L.Ed. 2d 420 (1989). The Court of Appeals has specifically held that a Plaintiff such as Meade who has been retaliated against because of the exercise of her constitutional rights, is entitled to recover for the emotional distress occasioned by that action. *Avitia v. Metropolitan Club of Chicago, Inc.,* 49 F 3d 1219, 1229 (7th Cir. 1995).

In addition to actual damages, where the violation of constitutional rights are as blatant as they are in this case, Plaintiff is entitled to a jury's consideration of punitive damages against

Defendant. Punitive damages are allowed under suits brought pursuant to 42 U.S.C. 1983 for violation of constitutional rights. A jury has the option of awarding such damages where the evidence shows the defendant has acted outrageously, and to deter others from repeating similar conduct. *Smith v. Wade,* 461 US 30, 53, 103 S Ct 1625, 75 L Ed 2d 632 (1983); *McKinley v. Trattles,* 792 F. 2d 1320, 1326-27 (7th Cir. 1984). Punitive damages are available where the Defendant has acted in callous disregard of a person's constitutional rights. Where, as here, the Defendant's conduct was at least reckless, if not intentional, punitive damages are available to Plaintiff. *Reich v. Cambridgeport Air Systems, Inc.,* 26 F 3d 1187, 1192 (1st Cir. 1994).

The IELRB decision did not begin to provide Plaintiff full relief for the damages Defendant has inflicted upon her. She is entitled to a jury's determination of the damages she has suffered. Defendant may be entitled to a credit for the monetary award encompassed by the IELRB award, but she is entitled to much more in the way of damages to make her whole, and perhaps to punish Defendant for its intentional wrongdoing.

## VII. DEFENDANT MUST BE BARRED FROM CONTENDING THAT PLAINTIFF'S POSITION AS A UNION OFFICIAL DEPRIVED HER OF HER RIGHT TO FREE SPEECH

Most of Defendant's arguments are frivolous and wholly without support. However, its final argument is so frivolous that it cries out for sanctions for having violated Rule 11. The claim that Plaintiff's speech is not protected by the First Amendment protection because she was acting as a union official is so frivolous as to virtually require no response. There is no dichotomy between speech by an individual as a union official and as a concerned citizen. That Plaintiff's speech was made as the President of the MVAFO provides her additional protection, if anything, as the Court of Appeals has held in this case. We have discussed this fully in Section III above, and need not reiterate that argument.

We add only a little more on the subject, to demonstrate that Defendant's position stands the law on its head. The right of public employees to express their views on matters concerning the operation of the schools in which they are employed, and the relationship between the

employer and its employees has been emphasized repeatedly by the Supreme Court. *City of Madison Joint School District No. 8. v. Wisconsin Employment Relations Commission*, 429 U.S. 167, 174-75, 97 S Ct 421, 50 L Ed 2d 376 (1976). School teachers are entitled to speak out on public issues relating to their employment without fear of reprisal. That this Defendant's firing of Plaintiff for speaking out on issues involving the propriety of its operations is unconstitutional is not open to question.

*Connick v. Myers*, 103 S Ct 1684, 461 US 138, 75 L Ed 2d 708 (1983) did nothing to diminish these rights. The Supreme Court in *Connick* recognized that public employees retain their rights to speak as citizens. It is the subject upon which Plaintiff speaks which provides her with the protection of the First Amendment. That Illinois State law may give her further rights for engaging in that speech does not detract from the protection afforded her by the First Amendment. What is apparent from the decision of the IELRB is that Defendant has violated Plaintiff's rights under both federal and state law.

                                              Respectfully submitted


                                              S/ Wayne B. Giampietro
                                              Attorney for Plaintiff

Of Counsel
Poltrock & Giampietro
123 W. Madison, Suite 1300
Chicago, IL 60602
312-236-0606; 312-236-9264 (Facsimile)
wgiampietro@giampietrolaw.com
Attorney No. 0947776